# CASES

IN THE

# SUPREME COURT OF ALABAMA.

NOVEMBER TERM, 1892-93.

## Stein *v.* Dahm.

*Bill in Equity for Injunction against Obstruction of Alley and Drain between two City Lots.*

1. *Granting rehearing, when decree is rendered in vacation.*—Rule 80 of chancery practice (Code, p. 825), providing that, "when the decree is rendered in vacation, either party may apply for a rehearing by the second day of the next ensuing term of said court," there is nothing in an assignment of error that the chancellor, after rendering a final decree in vacation, entertained and granted an application for a rehearing, which was made within the time prescribed by said rule ; the effect of the granting of the application being to leave the case without a decree, precisely as if none had ever been rendered.

2. *Allowing additional testimony to be taken, after rehearing granted.* When a rehearing has been granted by the Chancery Court, the question of allowing additional testimony to be taken is left to the sound discretion of the chancellor, and is not revisable on appeal.

3. *Easements; abandonment of.*—T. owned two adjoining lots in the city of Mobile, each 30 feet wide, and numbered, respectively, 143 and 145. There was a brick store on each lot, the one on 145 being 30 feet wide, covering the whole of the front part of the lot, and the one on 143 being 22 feet wide, leaving an 8 foot alley between the two stores. A drain or sewer running through the alley conducted water from a common back yard to the gutter in front of the stores. T. devised to B. lot 143, describing it as being 30 feet wide, and having a right of way through an alley, and devised to S. lot 145, describing it as 30 feet wide, with a right of way through an alley. With the consent of both B. and S., and at their expense, a tenant who occupied both stores converted the alley into a part of store 143, by removing the wall of the store, and extending the store across the alley to the wall of 145. Ten years after the change, S. conveyed to the complainant lot 145, the deed containing the usual full covenants of warranty, and describing the lot as 30 feet wide, but containing no mention of an alley. Thirteen years after the change, B. in the same way conveyed lot 143 to the defendant, the deed describing the lot as 30 feet wide, but containing no mention of an alley. The sewer or drain from the back yard to the front, through

31-96

the alleyway, has never been obstructed.   More than 20 years after the change above mentioned, the complainant filed the bill in this case, seeking to reopen the alley, to establish his common right to it as a way of ingress and egress to and from the rear of his property, and to establish his right to have the drain or sewer through the alley kept open and unobstructed,  *Held*, that the right to the alley as a passway to and from the rear of lot 145 had been abandoned, but that the easement in the sewer or drain still pertains to lot 145.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. WM. H. TAYLOE.

FRED'K G. BROMBERG, and CHARLES L. BROMBERG, JR., for the appellant.

CHAMBERLAIN & RICHARDSON, *contra*.

STONE, C. J.—It is assigned as error that the chancellor, after first granting relief to complainant, entertained defendant's petition and granted him a rehearing.   The first decree was rendered in vacation, under Rule 80 of Chancery Practice.—Code of 1886, p. 825.   The concluding clause of that rule is in the following language :   "When the decree is rendered in vacation, either party may apply for a rehearing by the second day of the next ensuing term of said court."   The application in this case was made "by the second day of the next ensuing term of said court," and the chancellor committed no reversible error in entertaining it.   In fact, we can not perceive on what ground such order, if applied for in time, could be reviewed in this court.   Of course, rehearings are granted under that rule, only when the chancellor is induced to change his mind, or comes to doubt the correctness of his first ruling.   Once granted, however, the case is left without a decree, precisely as if none had ever been rendered.   There is nothing in this assignment of error.

If the question were before us, we are not prepared to say we would hold the answer puts in issue the execution of the deed, "exhibit A," so as to cast on complainant the burden of proving its execution.   The answer does not deny the execution of the deed.   It only denies that Stein became the owner of the lot by virtue of the deed.   There are many conceivable ways in which that denial could be made good, notwithstanding the due execution of the deed by Mr. and Mrs. Saucier.   We need not suggest them.

Neither is there anything in the objection that after granting the rehearing, the chancellor gave further time and authority for taking additional testimony.   He granted that

[Stein v. Dahm.]

authority to each party. True, there are strong reasons why chancellors should exercise great caution in such conditions, but under our practice that is left to the sound discretion of the chancellor, and is not revisable. In the present case the question arose, not on the re-examination of witnesses, but on the examination of witnesses not previously examined. See *Bonner v. Young*, 68 Ala. 35; *Harrell v. Mitchell*, 61 Ala. 270.

John B. Toulme became the owner of two adjoining lots and houses in the city of Mobile, known as Nos. 143 and 145, on the south side of Dauphin street. Each lot fronted 30 feet on Dauphin street, and extended back from 120 to 130 feet. On each was a two-story brick store, and on the rear of the lots, extending across them, was a two-story brick warehouse, or workshop, divided into two compartments, corresponding to the divisions of the stores in front. In the rear of each store was a kitchen, and between the stores in front, the warehouse in the rear, and the two kitchens on the sides was an open space, court, or yard, which was common to both store-houses. We are not informed how the stores were covered, whether by one common connected roof, or by separate roofs; nor are we informed in what manner the second floors of the houses were constructed—whether they covered the entire area, or only that part inclosed within the brick walls, to be presently described.

Each store, at the time it was owned by Mr. Toulme, had brick walls entirely around it, but the side-wall of No. 143, next to 145, was bricked up only one story. What, if any thing, was above that, is not shown. Store No. 145 covered the entire lot, 30 feet wide, from the front extending as far back as the store extended, inclosed entirely with an outer brick wall. The lot 143 was not so covered. The house on it extended towards 145 some 22 feet, leaving a space or alley-way near or quite eight feet wide between the two stores. This extended, with the brick wall on either side, from end to end of the stores, and had double door-shutters at each end. These were usually kept open in the day-time, and the alley was a common passway for persons going to and from the rear of either of the store-houses. And there was a common drain or sewer through this alley-way, which conducted the accumulated water from the common back yard to the gutter in front of the stores. At the time we are speaking of, which was prior to 1860, one Werborn was tenant of the house 143 entire, and of all save the lower story of No. 145. He was an upholsterer, and kept a furniture store.

[Stein v. Dahm.]

In August, 1860, Mr. Toulme executed his last will, and soon afterwards died. The will was probated and established during that year. By his will he devised the two lots and store-houses separately to two of his married daughters, Madeline J. Saucier and Victoire Saucier. The husband of Madeline J. died, and by a second marriage she became Mrs. Breath. The devise to Madeline J. was number 143, describing it as "measuring thirty feet front," being the east half of said lot of land. To this devise he added the following clause: "That part now devised hath thereon a two-story brick house with a kitchen, a two-story privy, and the half of a two-story warehouse in the yard, and the right of way through an alley or passage, from Dauphin street to the yard in the rear of said property." Lot and house No. 145, "measuring thirty feet front on Dauphin street, and running back as the other," he devised to Victoire Saucier, and added, as part of the devise, "the right of way through the alley or passage from Dauphin street to the yard, as aforesaid."

Soon after the death of Mr. Toulme, Werborn became the tenant by a long lease of each of said stores, occupying the upper story of 145 as a residence, and using the entire house 143, the warehouse or workshop, and the lower story of 145, in his business of an upholsterer and furniture merchant. He continued to so occupy the two properties under renewals of lease, until a very short time before the filing of this bill, August 1, 1890.

Between 1860 and 1870—probably about 1866—a very material alteration was made in the store No. 143 and the alley-way, and in the connection of the two houses. That alteration was made at the request of Mr. Werborn and under his direction, but with the consent and at the expense of the owners of the property, the two devisees under Mr. Toulme's will. It consisted, so far as is material to this suit, in the following: The entire brick wall of No. 143 which adjoined the alley-way was taken down, and iron supporting columns were substituted in its stead; and the floor was extended entirely across the alley-way, and to the wall of 145. In that way that floor and the store-room were made to cover the entire thirty feet. The front door of the alley was removed, and the entire space filled and closed with a costly show window; and towards the rear of what had been the alley-way a broad staircase was constructed from the first to the second floor,—this for the purpose of reaching the second story of 143. The two stores remained in this condition when this bill was filed, except that two or three years be-

[Stein v. Dahm.]

fore that time a plank wall or partition, extending from column to column, had been erected on the line of the removed brick wall of No. 143. It is not shown, however, that the sewer or waste-escape from the back yard to the front, through the alley-way, had ever been obstructed. It is supposed it had been left to flow under the floor of the closed alley-way.

In February, 1876, Victoire Saucier and her husband sold and conveyed her house and lot, 145 Dauphin street, to Joseph Stein. The deed contains the usual full covenants of warranty. It describes the property sold as a lot fronting thirty feet, bounded east by property of Mrs. Breath. It gives no expression of the easement or right of way claimed, but conveys the property "together with the tenements, hereditaments, rights, members, privileges and appurtenances." After the execution of that deed, Stein became the landlord of Werborn of the property so conveyed, and so continued until the latter ceased to occupy it, November 1, 1889.

In June, 1879, Madeline J. Breath and her husband sold and conveyed to John Dahm store-house and lot No. 143 Dauphin street. Like the other deed, it describes and conveys the lot as fronting thirty feet on Dauphin street, and gives as its western boundary the lot sold and conveyed by Victoire Saucier and her husband to Stein; conveys with full covenants of warranty, "together with the tenements, hereditaments, rights, members, privileges and appurtenances." It makes no mention of the alley-way, or of any easement therein, but does refer to the will of her father as the source of her title. From this time forth Dahm became the landlord of Werborn of the property so purchased, and so continued as long as the latter occupied the store.

The present bill was filed by Stein, and seeks to reopen the alley, and to establish his common right to it as a way of ingress and egress to and from the rear of his property. He also seeks to establish his right to have the sewer or water-way through the alley kept open and unobstructed. On the second hearing the Chancellor dismissed the bill.

There can be no question that when the two sisters became the separate owners of the separate lots and stores, there attached to 145 the right of way and easement in the alley-way as it then stood, which is claimed in the present suit. Mr. Toulme's will clearly proves that. Of this easement, 143 was the servient, and 145 the dominant estate. Has that right been surrendered or lost?

The two sisters, Mrs. Saucier and Mrs. Breath, were ex-

amined as witnesses. Each testified that the alterations and improvements, closing up the alley-way, were made in 1865 or 1866; that they were made at the request of Werborn, but with their knowledge and consent, and at their expense. Mrs. Breath testified that Mrs. Saucier gave her consent at the time that the alley should be closed up, and each testified that its use as a passage-way was then and there entirely and forever abandoned. This Mrs. Saucier testified to as fact. She also testified that it was her intention at the time to surrender and abandon all claim to the alley as a passage-way, but this, being objected to, was illegal evidence. Uncommunicated intention can not, under our rulings, be made the subject of direct proof.—*Ball v. Farley,* 81 Ala. 288; *Burks v. Bragg,* 89 Ala. 204; *East Tennessee, Va. & Ga. Railway Co. v. Davis,* 91 Ala. 615. The *fact* of consentive closing up of the alley, and the *fact* of abandonment, were competent proof. This, according to the testimony, was done about ten years before Stein purchased, and about thirteen years before Mrs. Breath sold to Dahm. It was more than twenty years before this suit was brought, and before any complaint is shown to have been made by Stein.

That great jurist, Chief Justice SHAW, in *Dyer v. Sanford,* 9 Metc. 395, 401, said: "If the owner of the dominant grants a license to the owner of the servient tenement, to erect a wall which necessarily obstructs the enjoyment of the easement, and it is erected accordingly, it may amount to proof of an abandonment of the easement. It is not a release, because it is by parol. But it results from the consideration that a license, when executed, is not revocable; and if the obstruction be permanent in its nature, it does, *de facto,* terminate the enjoyment of the easement." In *Pope v. Devereaux,* 5 Gray 409, this principle was declared: "Evidence of an executed oral agreement between the owners of the dominant and servient tenements to discontinue an old way, and substitute a different one, is competent evidence of the surrender of the old right of way." And in *Ballard v. Butler,* 30 Me. 94, is this language: "When the person to whom a servitude is due does an act which is incompatible with the nature and exercise of it, the servitude is thereby extinguished." It is said in 2 Washb. Real Prop. [57]: "There are many acts of abandonment, short of a non-user for twenty years, which, if done by the owner of the dominant tenement, and acquiesced in by that of the servient, may amount to a surrender of such an easement, provided such act of abandonment have been done with such inten-

[Stein v. Dahm.]

tion." In 6 Amer. & Eng. Encyc. of Law, 147, is this language: "Abandonment will be presumed from various acts of the dominant owner; as for example, where the holder of the right does, or permits to be done, any act inconsistent with the future enjoyment of the right." See also notes, 3 Kent's Com. *448–9; *King v. Murphy*, 140 Mass. 254; *Corning v. Gould*, 16 Wend. 531. In 2 Wait Ac. & Def. 680, it is said: "A use which had been abandoned or disused at the time of the sale would not come within the conditions above given, [transfer of the easement by a sale and conveyance of the dominant estate,] and a right which did not then legally exist, although it might have had a previous existence, would not be revived without express words."

If it be objected that the removal of the door-shutters and substitution of the show-windows, the extension of the floor of 143 across the alley-way, and the construction of the stairway in what had been the alley, were none of them of a permanent character, but all might be restored to their former condition and at trifling expense, without injury to the properties, what will be said of the removed brick wall which separated the store No. 143 from the alley-way? All the alterations were made at one and the same time, and with the knowledge and consent of both landlords, and at their expense. All were made in execution of a common design and purpose. Can it be supposed that mutual consent would have been given, and the necessary expense shared in, if at the end of a term original conditions were to be re-established, and store 143 left without a wall to separate and protect it from the open alley? We hold that the testimony very fully proves that the right of way through the alley, which pertained originally to the lot and store 145, was surrendered and abandoned when the alterations were made in 1865 or 1866. This was long before the present owners, Stein and Dahm, had any interest in or claim to the several properties; and consequently Stein, by his purchase, acquired no right to use the alley as a passway to and from the rear of his property.

We think, however, that the sewer, or waste-way, which runs through or under the alley and drains the common back yard, rests on a different principle. It is not proved that it has ever been obstructed or discontinued. We infer from the circumstances that it flows under the floor which was extended from 143 across the alley. This being the case, the record fails to show an abandonment of this part of the easement, and it follows that this right still pertains to 145.

So far as the right of ingress and egress through the alley-way is concerned, the decree of the Chancellor is affirmed.

The bill charges that defendant Dahm claims the right to close the sewer through and under what was formerly the alley. and that he intends and threatens to close that drain or outlet against complainant. The answer admits this charge to be true. We hold that complainant is entitled to an injunction on this feature of the case made by his bill.

It is therefore ordered and decreed that the decree of the Chancellor be to that extent reversed; and this court, proceeding to render the decree the chancellor should have rendered, doth order and decree that the injunction, so far as it restrained the closing of the sewer or drain, be reinstated and made perpetual.

Let the complainant Stein pay three-fourths of the costs of the original suit, and one-third of the costs of the appeal; and the remaining costs, that is, one-fourth of the costs of the original suit, and two-thirds of the costs of the appeal, alike in the court below and in this court, are adjudged against Dahm, the appellee.

Reversed and rendered.