# Richmond.

## SCOTT v. MOORE.

### NOVEMBER 22, 1900.

Absent, Keith, P., and Phlegar, J.*

1. COMMISSIONER'S DEED—*Misdescription.*—The deed of a commissioner of court which departs from the description given in the record of the property conveyed, and conveys more than the former owner was entitled to, is, to that extent, in excess of the power of the commissioner, and the grantee takes only such estate as the former owner had.

2. DEEDS—*Appurtenances—Easements.*—When property is conveyed, everything which belongs to it or is used with it, and which is reasonably essential to its enjoyment, whether specifically mentioned or not, passes as incident to the principal thing, or as a part of it.

3. DEEDS—*Easements—Common Owner of Two Lots—Intention as to Easements.*—If the owner of two adjacent lots sells both lots at the same time to different purchasers, each grant carries all the apparent and continuous easements which are necessary for the reasonable use of the property granted, and which have been or are at the time of the grant used by the grantor for the benefit of such property. Whether such easement is continuous and permanent, or merely temporary, will depend on the facts of the particular case, but the clear intention and purpose of the common owner in establishing the easement will be considered of much importance in determining its character.

4. EASEMENTS—*Visible Use—Presumed Intention of Purchaser.*—A purchaser is presumed to have contracted with reference to the condition of the property at the time of the purchase. If the condition of the premises shows plainly and unmistakably that an alleyway over the premises purchased has been used, was in use, and was

*This case was argued and submitted before Judge Phlegar qualified.

intended for the use of the owner or occupant of an adjacent lot, the purchaser will take subject to the rights of the adjacent owner or occupant.

5. COMMON PROPERTY—*Easements—Servitudes.*—Servitudes adopted by the owner of lands, which are plainly visible or notorious, and from the character of which it may be fairly presumed that he intended their preservation as necessary to the convenient enjoyment of his property, become, when lands are divided and pass into other hands, permanent appurtenances thereto, and neither the owner of the dominant nor servient portions of the land has power to adversely interfere with their proper use and enjoyment.

6. EASEMENTS—*Failure to Use—Abandonment.*—The mere failure to use an easement, unaccompanied by proof of an intention, or of some act done or omitted which is inconsistent with the future enjoyment of the right, and which clearly evinces an intention to abandon the easement, is not sufficient evidence of abandonment.

7. EASEMENTS—*Right of Way—Abandonment—Extinguishment.*—A right of way, or other easement, may be abandoned and extinguished by acts in *pais,* without deed or other writing; and a cessation of use, coupled with any act indicative of an intention to abandon, would have the same effect as an express release, without regard to time. But such easement is not extinguished by the habitual use by its owners of another way equally convenient instead of it, unless there is an intentional abandonment of the former way.

8. EASEMENTS—*Abandonment—Estoppel.*—Abandonment of easements by matters in *pais* is founded upon the doctrine of estoppel, but to establish such estoppel it is necessary that the representation or conduct relied upon as such should have been intended to influence the other party to act; and, if there was no such intention, the estoppel is not made out.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced May 5, 1899, in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*Scott & Buchanan* and *J. H. Ingram,* for the appellant.

*Christian & Christian* and *H. W. Anderson,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

In the year 1835, James Caskie purchased 130 feet of land in the city of Richmond, fronting on Franklin street, between Fourth and Fifth streets.  Upon it, he built four houses now known as Nos. 400, 402, 404 and 406, east Franklin.  No. 400 east Franklin is situated on the northeast corner of Franklin and Fourth streets, and No. 402 is just east of No. 400.  At the time of the construction of these houses, James Caskie laid off in the rear of No. 400, and separated from it by a brick stable and brick wall, an alley-way four feet six inches wide, connecting premises No. 402 with Fourth street.  This alley-way entered No. 402 at the point where the ancient wall referred to in James Caskie's will as the division line between the two properties, Nos. 400 and 402 ended, to wit, four feet six inches from the southern line of the adjoining property, thus leaving an opening of this dimension from the alley-way into premises No. 402.  There was a gateway at each end of the alley—that is, at its Fourth-street entrance, and its entrance into premises No. 402.  This alley-way was used by the occupants and owners of No. 402 at pleasure up to and until the obstruction of the same complained of in this suit.  It seems to have been of no use to the owners or occupants of No. 400, as this property had a private alley-way of its own conecting its rear premises with Fourth street.  In the bed of the alley-way connecting premises No. 402 with Fourth street, James Caskie constructed a sewer for the drainage of No. 402, and the two properties on the east thereof owned by him, which sewer was, and is now, the only means of drainage from No. 402.  The owner of No. 400 had no occasion to use this drainage, as, that property being situated immediately on the corner of Franklin and Fourth streets, the sewerage connections were direct with the public sewer in Fourth street.

James Caskie died in the year 1866, and by will left No.

400 east Franklin, with appurtenances, to trustees for the benefit of the family of his son, James A. Caskie; No. 402 east Franklin, with appurtenances, to his son, John S. Caskie; and Nos. 404 and 406 east Franklin to other children of the testator, but with these two last-named properties we are not concerned.

John S. Caskie died in the year 1869, and left the property, No. 402 east Franklin, to his daughter, Mrs. Dr. Burfoot. Mrs. Burfoot owned this property up to 1891, when she conveyed it to R. Carter Scott, who, in 1895, conveyed it to his wife, Mrs. L. M. B. Scott, the complainant in this suit.

The property, No. 400 east Franklin, was held by trustees up to 1870, when it was conveyed by Isham Keith, substituted trustee, to John G. Moffet. Moffet died about the year 1884, and his estate was settled under the supervision of the Chancery Court of the city of Richmond, in the suit of *Moffet's Exors.* v. *Moffet, &c.* In that suit, No. 400 east Franklin was sold under decree of court by special commissioners, and purchased by Thomas J. Moore for his wife, Mrs. Julia G. Moore, the defendant to this suit. This sale was confirmed on October 17, 1885, and deed executed to Mrs. Moore in 1887. The special commissioners had a plat of No. 400 east Franklin made prior to its sale or its second advertisement—there being no sale at the first offering of the property—which plat shows the property as fronting 32 feet 4 inches on Franklin, and running back on a parallel line with Fourth street 118 feet 4 inches, which brings this latter line to the end of the brick wall referred to in James Caskie's will as the dividing line between Nos. 400 and 402, and to the south line of the alley-way in rear of No. 400. The second advertisement of this property by the special commissioners described it as being of the dimensions given in the plat referred to, which did not include the contested alley-way; but when the commissioners came to make a deed to Mrs. Moore, the purchaser, from some cause not explained, they described

the property as running back on a line parallel to Fourth street
123 feet 6 inches, which includes the contested alley-way. The
decree of the court under which the commissioners acted de-
scribed the property only in general terms, as "fronting 27 feet,
more or less, on Franklin street, and being the same real estate
conveyed to John G. Moffet from Isham Keith, sub. trustee,
dated," etc., and the deed from Keith, trustee, to Moffet de-
scribed it as " that certain house, lot and appurtenances on the
northeast corner of Franklin and Fourth streets, in the city of
Richmond, with metes and bounds as set forth in the will of
James Caskie, deceased, to which reference is made," etc.

The fourth clause of the will of James Caskie describes the
property, now No. 400, as "the house and lot and appurte-
nances, at the northeast corner of Franklin and Fourth streets,"
and the seventh clause describes the property, now No. 402, as
"the house and lot and appurtenances on Franklin street, ad-
joining that heretofore given * * * (i. e. No. 400);
and the wall separating the two lots in the rear, extending in
a straight line to Franklin street, shall be the division line be-
tween them."

In 1885 Mrs. Moore, before the sale of the property No. 400
east Franklin to her had been confirmed, and before she had
paid the purchase money therefor, moved on the premises, and
had the gates at either end of the alley-way, now in dispute,
nailed up, and later—sometime in 1889—she or her husband
had the ancient dividing wall spoken of in James Caskie's will
extended across the alley, by adding thereto a wall of much
narrower width; but all this was done without the consent or
knowledge of Mrs. Burfoot, the owner, or her tenant, of
premises No. 402. During the summer of 1898, Mrs. Moore
commenced excavations in the rear of her premises for the
purpose of building thereon flats fronting on Fourth street;
and, in addition to the dimensions of the lot she owned, it be-
came apparent that it was her intention to occupy this now

disputed alley-way, and to permanently obstruct it with a brick building, the foundation of which would necessarily involve, as is contended, a destruction of the drainage of the rear of premises No. 402, its sewerage connection with Fourth street, and the lateral support of the ancient dividing wall between the two premises. Whereupon Mrs. Scott, the present owner of premises No. 402, filed her bill in the Law and Equity Court of Richmond city, setting forth substantially the facts above stated, and praying for an injunction restraining the defendant, Mrs. Moore, from further prosecuting her said work, so far as it interfered with the alley-way and sewer connection of premises No. 402 with Fourth street, and the lateral support of the dividing wall referred to in James Caskie's will, which injunction was granted.

The judge of the Law and Equity Court being so situated that he did not deem it proper for him to hear and decide the case, requested Judge Wellford, of the Circuit Court of the city of Richmond, to preside, and upon the hearing of the cause upon the bill and answer and exhibits therewith, together with the depositions taken on behalf of both complainant and defendant, Judge Wellford refused to dissolve the injunction. Whereupon the defendant's counsel took the deposition of James A. Caskie on behalf of the defendant, and objection having been made to Judge Wellford's presiding further in the case, and he, for reasons satisfactory to himself, declining to do so, it was, by order of the judge of the Law and Equity Court, transferred to the Chancery Court of the city of Richmond, and the judge of the latter court, upon a hearing of the cause, dissolved the injunction and dismissed complainant's bill. From this decree an appeal to this court was granted.

The first contention of appellant is that " it was error for the judge of the Circuit Court of the city of Richmond, sitting, as far as this case is concerned, as the judge of the Law and Equity Court, to allow himself to be ousted of jurisdiction

of the case after having jurisdiction, as provided for by statute, and after having virtually decided the case in favor of appellant."

As the decree is to be reversed upon other grounds, we deem it unnecessary to comment upon this assignment of error.

The remaining assignment of error brings up the case for consideration upon its merits.

The questions to be determined are: First, What title, if any, did appellee, Mrs. Moore, acquire to the alley-way in question when she became the owner of premises No. 400 east Franklin? Second, Did an easement of a right of way over this alley ever exist in favor of the owner of premises No. 402? And, third, If it existed, has it been lost by abandonment?

Much reliance is placed by appellee upon her deed from the special commissioners of the court in the suit of *Moffet's Exors. v. Moffet, &c.,* in which, as we have seen, No. 400 is conveyed to her as running back on a line parallel to Fourth street 123 feet 4 inches, which takes in the alley-way; but, as we have also seen, there is nothing in the decree under which these commissioners were acting to authorize that description of the property. There is nothing in the deed from Keith, sub. trustee, to John G. Moffet, whose property the commissioners were conveying, to authorize it. That description was at variance with the plat of No. 400 which the commissioners had made, and which was filed in the suit in which appellee made her purchase. The advertisement made by these commissioners after they had the plat of the property made, and under which appellee made her purchase, described the property as running back from Franklin street 118 feet 4 inches, which left out the alley-way in dispute. Considering the manner in which the testator, James Caskie, constructed the two premises, Nos. 400 and 402, the uses made of the alley-way up to the time of his death, and the language of his will disposing of them to his children, there is nothing to justify the conclusion that the alley-way was to pass

exclusively to the devisee of No. 400. Therefore, the commissioners, grantors of appellee, exceeded their authority in executing the deed describing the property so as to include this alley-way, and their grantee only took such title to the alley-way as existed in the estate of John G. Moffet, deceased.

It is a firmly established principle, concurred in, it may be said, by the text-writers and adjudicated cases, that, where there is a grant of some estate described generally, and not by specific metes and bounds, as a mill or dwelling-house, all parts or parcels of the mill or dwelling-house pass with the mill or dwelling-house as a portion of the same, although such portions may extend into, over and under the remaining land of the grantor. The privileges pass rather as a part and parcel of the land conveyed, and so would equally pass, though there were used in the deed no such words as "with all easements," or "with all privileges and appurtenances." This is upon the principle that, when property is conveyed, everything which belongs to it, or is used with it, and which is reasonably essential to its enjoyment, passes as incident to the principal thing, or as a part of it; that is, where such privileges or *quasi* easements are necessary for the reasonable and convenient enjoyment of the granted premises. Goddard on Easements, 120-21; *Elliott* v. *Rhett,* 57 Amer. Decs. 750 and notes; Washburn on Easements, pp. 85, 86.

It was said by Story, J., in *Whitney* v. *Olney,* 3 Mason, 280: "The good sense of the doctrine on this subject is that under the grant of a thing whatever is parcel of it or of the essence of it, or necessary to its beneficial use and enjoyment, or in common intendment is included in it, passes to the grantee." 2 Minor's Inst. (4th ed.), 27.

In Washburn on Easements, after reviewing a number of authorities on the subject of easements, on pages 102-3, it is said: "Although it might, perhaps, be difficult to embody the leading doctrine of the foregoing cases into any general propo-

sition, it would seem that, in case of a division of an estate consisting of two or more heritages, whether an ease or convenience which may have been used in favor of one, in or over the other, by the common owner of both, shall become attached to the one or charged upon the other, in the hands of separate owners, by a grant of one or both of those parts, or upon a partition thereof, must depend, when there are no words limiting or defining what is intended to be embraced in such deed or partition, upon whether such easement is necessary for the reasonable enjoyment of the part of such heritage as claims it as an appurtenance. It must be reasonably necessary to the enjoyment of the part which claims it, and where that is not the case, it requires descriptive words of grant or reservation in the deed, to create an easement in favor of one part of a heritage over another."

Again, on page 105, it is said: "It may be considered as settled law in England, (1) that when the owner of two adjoining lots sells one, he does not reserve impliedly for the benefit of the other any easements except those of strict necessity, such as a way of necessity; but, (2) that he does impliedly grant to the grantee all those continuous and apparent easements which are necessary for the reasonable use of the property granted, and which have been, or are at the time of the grant, used by the owner of the entirety for the benefit of the part granted; (3) if he sells both lots at the same time, each grant carries all the apparent and continuous easements which are necessary for the reasonable use of the property granted, and which have been or are at the time of the grant used by the grantor for the benefit of such property."

It is under this latter clause mainly that the case we have in hand comes.

The decisions upon the subject of implied grant in the different States of the Union are numerous and often conflicting, but the more recent of them support, it may be said, the

rule deduced from the general principles of the law sustained by the English decisions discussed by Washburn, just referred to.

In *Elliott* v. *Rhett, supra,* the Supreme Court of South Carolina said: "Apart from all considerations of time, there is implied, upon the severance of a heritage, a grant of all those continuous and apparent easements which have in fact been used by the owner during its unity, though they have no legal existence as easements, as well as of all those necessary easements without which the enjoyment of the several portions could not be fully had."

The opinion of the Supreme Court of Maryland by Miller, J., in *Mitchell* v. *Siepel,* 53 Md. 251, is an able and elaborate discussion of the American and English cases as to the law applicable to cases where the severance of an heritage is by simultaneous conveyance to separate persons, and it is said: "All these continuous or apparent easements, or, in other words, all these easements which are necessary to a reasonable enjoyment of the premises granted, and which have been, or are at the time of the grant, used by the owner of the entirety for the benefit of the part granted will pass to the grantee under the grant."

The rule of law there laid down is identical with that stated in *Elliott* v. *Rhett, supra,* except that in the last named case the opinion goes farther, and adds: "As well as of all those necessary easements without which the enjoyment of the several portions could not be fully had."

Grant that a temporary provision or arrangement made for the benefit of an entire estate will not constitute the degree of necessity and permanency required to burden a property with a continuance of the same when divided or separated by conveyance to different parties, as was held in *Frances' Appeal,* 96 Pa. St. 200, cited for appellee, still the manner of constructing two contiguous premises by the owner of both, with refer-

ence to the easement of a right of way and sewerage connec-
tion, the right of way being well defined by a brick wall on one
side of the alley, and a brick wall and the wall of a brick building
on the other, forming the alley-way leading from the rear of one
of the premises to the nearest street in which the main sewer-
age of that part of the city is laid, will go very far in deter-
mining the character of the easement, whether it be continuous
and permanent, or only temporary. Hence what was clearly
the intention and purpose of the owner of the entire property is
to be considered as of much importance in determining whether
cr not an easement which he has established for the benefit of
one portion of the property over, through or under the other
is to be regarded as continuous and permanent, or a necessary
easement without which the enjoyment of the several portions
could not be fully had. *Davis* v. *Sear,* L. R., 7 Eq. Cases, 427;
*Huttemeir* v. *Albro,* 18 N. Y. 48; 2 Bosworth Repts. 546;
*Vorhees* v. *Burchard,* 55 N. Y. 98; *Doyle* v. *Lord,* 64 N. Y.
432; *Thompson* v. *Minor,* 30 Iowa, 386; Washburn on Ease-
ments, 103.

In *Scott* v. *Beutel,* 23 Gratt. 1, cited by appellee, one of two
adjoining lots owned by the same parties was sold at auction
under the decree of court. At the time of the sale nothing was
said of an easement running from the unsold lot through the
one sold, for carrying water from the former to a culvert in the
street; and such easement was not to be seen on the lot sold,
and was not known to the purchaser, hence it was held that the
purchaser was entitled to have his lot free of the easement.
This decision was upon the ground that the easement or servi-
tude which was claimed was not *obvious* or *apparent to view.*
2 Minor's Insts. (4th ed.), 27.

After reviewing the case of *Scott* v. *Beutel* at length, Bouldin,
J., in *Hardy* v. *McCullough,* 23 Gratt. 259-60, said: "We
understand from the decision, that the question whether an
easement or servitude will be created, or pass as incident to or

part of the property granted, is a matter of contract, and must
of course depend on the intention of the parties, as expressed in
the contract.  If thus expressed, the terms of the contract must
control its construction.  When not thus expressed, the con-
struction will be controlled by the use and condition of the
property at the time of the sale, and certain implications and
presumptions of law arising thereon."      ·

In that case, the decision was adverse to the claim of an ease-
ment made by appellant, Hardy, under a deed from one Wills,
but the court said: "Had the deed to Wills, under which the
appellant claims, conveyed the wharf property, with its appur-
tenances, to Wills, with general warranty, with no reference to
the terms and conditions on which he was to use the dock, we
are of opinion on the facts proved in the cause, that the right
to use the dock in connection with and for the benefit of the
wharf, as it has been openly used by the grantors, would have
passed to the grantee by implication of law, as an easement, or
as a part of the property granted."  The facts in that case were:
Southgate and others were owners of two wharfs and a small
dock between, fronting on Elizabeth river at Norfolk, which
dock was used in connection with both wharves.  In 1851, they
sold to Wills the eastern wharf with its appurtenances, with
general warranty, making the logging on the west line of the
dock the boundary; and in their deed they covenant to allow
Wills to have the common use with themselves or their tenants
of the said dock for the purpose of landing goods on his wharf
from vessels or boats, which might enter therein, as long as the
dock and adjoining premises were owned by them, or until they
might choose to fill up the dock.  Wills, in consideration thereof,
undertaking to clear out from time to time the dock at his
own expense.  In March, 1854 they (S. and associates) sold
the other wharf to Ball.

*Sanderlin* v. *Baxter*, 76 Va. 299, is also relied on by appellee.
In that case "Woodlawn" and "Fairfield," separated only by

a public road, were owned by Anthony Walke, Sr., who drained the former by ditches through the latter to a river. In 1811 he deeded " Woodlawn" to his son A, who conveyed it to appellee Baxter. In 1820 he devised " Fairfield " to his son D, who conveyed it to appellant Sanderlin. The deed and will were silent about draining. In 1878, appellant undertook to stop up the ditches, and appellee obtained an injunction. When " Woodlawn" was granted, the ditches were open and visible, and, except for a brief time, had been used continuously to drain it. It could be drained in no other way, except by heavy expenditure. They were necessary to a proper enjoyment of the premises. This court, in an opinion by Burks, J., affirmed the decree of the lower court perpetuating the injunction.

He says that the doctrine of grant of an easement by implication under circumstances such as were shown in that case, seemed now to be well settled.

He briefly reviews the authorities, other than our own decisions, recites the decisions of this court, and quotes from the opinion of Bouldin, J., in *Hardy* v. *McCullough, supra,* italisizing that portion of it which says that "when the intention of the parties is not expressed in the contract, the construction will be controlled by the use and condition of the property at the time of the sale, and certain implications and presumptions of law arising thereon," and holds that, upon the facts in the case, although the right to the use of the ditches as an easement was not given in express terms by the deed of the elder Walke to his son, under whom appellee Baxter claimed, it passed with the land granted as an incident.

That case is relied on to support a technical distinction which has in some cases been recognized between what are called "apparent and continuous easements" and "discontinuous easements," the former being defined to be those constant and visible; and the latter, those which are only visible in their

exercise—the contention being that an easement of way is not an apparent and continuous easement, and therefore cannot be presumed to pass as incident to grant.

The opinion also quotes with approval from Washburn on Easements, *supra,* that, in case of a division of an estate, consisting of two or more heritages, whether an ease or a convenience which may have been used in favor of one, in or over the other by the common owner of both, shall become attached to the one or charged upon the other, in the hands of separate owners, by a grant of one or both of those parts, or upon a partition thereof, must depend, where there are no words limiting or defining what is intended to be embraced in such deed or partition, upon whether such easement is necessary for the reasonable enjoyment of the part of such heritage as claims it as an appurtenance. It must be *reasonably necessary* to the enjoyment of the part which claims it, and where that is not the case, it requires descriptive words of grant or reservation in the deed to create an easement in favor of one part of a heritage over another. In other words, whether the easement claimed will pass as an incident to the property granted or acquired in a partition of the heritage will depend upon the facts and circumstances of the particular case.

Mr. Minor, 2 Minor's Insts. 27, classes *ways* as an easement as to which a grant is implied upon severance, and says that the mode of severance does not appear to affect the doctrine in question; that it is believed to arise not only in cases of direct conveyance, but also when the ownership is severed by partition, * * * * by devise, or by any other mode of alienation.

We see nothing in the decisions of this court cited by appellee that is opposed to the view we take of this case.

The evidence shows that the alley-way in controversy was, as we have observed, clearly defined, and in use at the time of the death of the testator, James Caskie, and also at the time of the sale of No. 400 to appellee; its northern boundary being

a wall or fence separating it from the adjoining property; its southern line being a stable and wall separating it clearly from appellee's property.   It had a gateway at its Fourth-street entrance, and at its entrance into appellant's property, No. 402. The condition of the premises showed plainly and unmistakably that the alley-way had been used, was in use, and was intended for use to the owner or occupant of No. 402, and appellee is presumed to have contracted in reference to the condition of the property at the time of her purchase. *French* v. *Williams*, 82 Va. 462.

We cannot conceive that the physical evidence could have been plainer, more open, more obvious, than that this alley-way was constructed and used for the benefit of premises No. 402.   Premises Nos. 400 and 402 east Franklin stood at the time of appellee's purchase as James Caskie constructed them. He arranged and adapted these premises the one to the other. He constructed the well defined alley-way in the rear of No. 400, connecting Fourth street with premises No. 402, upon the rear of which he built a wood-house, a coal-house, a servant's-house, and other houses, situating them with reference to the alley-way, so as to make the most direct and convenient means of supplying the premises with fuel, or for disposing of garbage, or the passing in or out of servants   He drained the premises through and under the alley-way into Fourth street, and it has so remained ever since.   No. 400 was constructed and arranged with an alley into Fourth street, and a sewerage connection directly with Fourth street, thus pointing out plainly that the alley in the rear of No. 400, and the sewerage connection laid therein, were intended as an easement, and for the use of No. 402, and they were so used at the will or convenience of the owner or tenants of premises No. 402 until the interference therewith complained of in this suit.

James Caskie, grandson of the testator, James Caskie, states that he remembers this alley-way as far back as 1860, and re-

iterates, as does Mrs. Burfoot, that it was used only for the benefit of No. 402.

Norman V. Randolph occupied No. 402 from 1873 to 1878, and testifies that the alley-way was used exclusively for the benefit of those premises; that he used the alley-way through which to bring fuel, etc.; that the two gates were kept locked, and he carried the keys in his pocket, and that Mr. Moffet who, during that period owned No. 400, made no use of the alley-way for any purpose whatever.

Mrs. Doran states that she has known of the existence of this alley-way for the past thirty years, having lived on the property immediately adjoining the northern line of the alley, and that the alley was used exclusively for the benefit of No. 402 east Franklin. She also describes how the alley was separated from No. 400, as above stated, and as does Mr. Randolph and other witnesses.

Mrs. Moore, appellee, herself testifies as to the existence of the private alley-way on her premises, connecting them immediately with Fourth street, and that her stable, which formed a part of the wall separating the alley-way from her premises, opened into Fourth street, and was entered from that street. True, she says that she did not know of the alley-way in question as an easement to premises No. 402, yet she admits that immediately upon moving into No. 400, which she did as soon as she contracted to buy the property, she had the gates at either end of the alley nailed, and later extended the brick wall across the alley, and further admits that this was all done without the consent of any one, or without notice to any one.

" Servitudes adopted by the owner of lands, which are plainly visible or notorious, and from the character of which it may be fairly presumed that he intended their preservation as necessary to the convenient enjoyment of his property, become, when lands are divided and pass into other hands, permanent appurtenances thereto, and neither owner of the dominant or servient

portions of the land have power to adversely interfere with their proper use and enjoyment." *Phillips* v. *Phillips*, 48 Pa. St. 178; *Eby* v. *Elder*, 122 Pa. St. 342; *Stein* v. *Dahm*, 96 Ala. 485.

We are of opinion that when appellee acquired title to premises No. 400 east Franklin, she took it subject to a right of way and easement in the alley-way attached to premises No. 402, and extending to Fourth street in rear of premises No. 400, and of this easement No. 400 is the servient and No. 402 the dominant estate.

Has that right in the appellant as owner of No. 402 been surrendered or lost?

Mrs. Burfoot, who inherited No. 402 from her father, John S. Caskie, and who owned it from 1869 to 1891, testifies that she had no knowledge of the closing up of the alley until the institution of this suit; that she gave no consent for the alley to be closed up, nor acquiesced in its being closed, and that had she known of appellee's purpose of obstructing the alley-way, she would not have allowed it. Mrs. Burfoot never resided upon No. 402, but rented it to tenants. In 1891 she, without knowledge that any attempt had been made to close the alley-way, conveyed the property to R. Carter Scott, who afterwards in 1895, conveyed it to appellant. Mrs. Burfoot further testifies that she considered that the alley went with the house conveyed to Scott, as she had always claimed the alley, and her right had never been questioned.

Mr. Scott, upon taking possession of the property, and, finding the alley closed, immediately interviewed Mr. Hill, the agent of Mrs. Burfoot, who sold him the property, and Mr. Hill stated to him that the alley belonged to the property. He further states that he had an interview with Dr. Thomas J. Moore, husband of appellee, and who acted as her agent in the purchase of No. 400, who stated to him (Scott) that premises No. 402 were entitled to the use of the alley, and that he would remove

the obstructions whenever he (Scott) or his wife, the appellant,. desired it.    Appellant testifies also as to the conversation with Dr. Moore.

While this evidence may not be competent to prove a contract between appellant and appellee made with appellee's husband, as her agent, with reference to the alley and an easement therein, it is competent in rebuttal of the statements of appellee, and of the other proof relied on by her, that appellant or those under whom she claims had surrendered her right of an easement in the alley-way, *i. e.* abandoned it.

Appellee relies strenuously upon the testimony of James A. Caskie (for whose family's benefit James Caskie, deceased, left. in trust premises No. 400), to show, first, that the alley-way was never used or regarded as an easement attached to No. 402; and, second, if such was ever the case, the right had been surrendered or lost before Mrs. Burfoot parted with the property. This witness removed from Richmond to the county of Fauquier in 1868, where he has since resided.   He never lived upon either Nos. 400 or 402, but when he lived in Richmond, he was a frequent visitor to his brother, John S. Caskie, who owned and occupied No. 402.    The sum and substance of his testimony is that, in conversations witness had with his own family, they considered that the alley-way belonged exclusively to No. 400, and that the use of it by his brother in connection with No. 402, was a matter of courtesy to his brother.   But witness admits that his brother John used the alley-way as he chose; that his right to do so was not questioned, and that he (witness) never had any talk whatever with his brother either about No. 400, or the alley-way   He further admits that the alley-way was not used in connection with No. 400, and that the wood and coal for those premises were brought from Fourth street through another way provided by his father in the construction of premises No. 400, and was unable to say with any degree of cer-

tainty that there was any opening from No. 400 into the alley-way in question.

We shall not attempt to review in detail the authorities cited by appellee's counsel and ably presented in support of her contention that the easement attached to No. 402 in the alley-way in question has been surrendered or lost, as we do not think that they are applicable to the proof in this case.

The burden of proof was upon appellee to show an abandonment on the part of appellant or her husband, or Mrs. Burfoot, under whom appellant claims, of the right of an easement in the alley-way, and her proof fails to show it.

It appears that one or more of the tenants of No. 402 for a short term, did not use the alley-way in question, and it may be conceded that appellant, or her immediate grantor, during the period from the latter's purchase from Mrs. Burfoot to the time when appellee disclosed her purpose to destroy it, did not use the alley-way, still this, unaccompanied by proof of an intention on the part of the owner of the premises, or of some act done or permitted which is inconsistent with the future enjoyment of the right, and which clearly indicated an intention to abandon the easement, is not sufficient. *Simmons* v. *Cloonan*, 81 N. Y. 557; *Ballard* v. *Butter*, 30 Me. 94; 4th Amer. & Eng. Decs. in Eq. 340-41.

" There are many acts of abandonment, short of a non-user for twenty years, which, if done by the owner of the dominant tenement, and acquiesced in by that of the servient, may amount to a surrender of such an easement, provided such acts of abandonment have been done with such intention." *Stein* v. *Dahm*, *supra*, and authorities there cited.

"A right of way, whether acquired by grant or prescription, is not extinguished by the habitual use by its owner of another way, equally convenient, instead of it, unless there is an intentional abandonment of the former way." *J. P. Acqueduct Co.* v. *Chandler*, 121 Mass. 3; *Eddy* v. *Chace*, 140 Mass. 471; God-

dard on Easement, 467; 3 Kent's Com. 449; 1 Amer. & Eng. Enc. L. (2d ed.), p. 1 and authorities there cited.

A party entitled to a right of way or other mere easement in land may abandon and extinguish such right by acts *in pais*, and without deed or other writing; and a cessation of the use, coupled with any act indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time. *Vogeler* v. *Geiss*, 51 Md. 408.

There are a great number of like decisions of courts of last resort, and they rest upon the equitable doctrine of estoppel, too well understood and established to require a discussion of it here. In order to establish an estoppel, it is necessary that the representation or conduct relied upon should have been intended to influence the other party to act; and, if there was no such intent, the estoppel is not made out. 4 Amer. & Eng. Decs. in Eq. 276-340-41.

There is nothing whatever in the evidence in this case of any act on the part of appellant, or on the part of those under whom she claims, from which it could be reasonably inferred that she or they intended to surrender any right to the easement in the alley-way in question. It cannot be said that she or they have done any act, or permitted any act to be done, whereby appellee has been led into a change of her condition, for as soon as it became apparent that she intended to destroy the alley-way and the sewerage connection through it, this suit was brought, and the injunction obtained restraining her from proceeding with the work.

Upon the whole case, we are of opinion that the decree appealed from is erroneous, and it will therefore be reversed and annulled, and this court will enter such decree as the lower court should have entered, perpetuating the injunction awarded in the case, with costs to appellant.

*Reversed.*