# Richmond

HORACE W. LINDSEY AND MARY LOUISE LINDSEY v. FLOYD H. CLARK
AND HELEN CLARK.

March 10, 1952.

Record No. 3905.

Present, All the Justices.

The opinion states the case.

*G. H. Branaman,* for the appellants.

*Owen S. Livsie* and *McRae Werth,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This suit was instituted by the Lindseys to enjoin the Clarks from using a driveway along the north side of the Lindsey lots and to have themselves adjudged the fee simple owners of the two lots claimed by them. The trial court held that the Clarks owned a right of way on the south side of the Lindsey lots and,

in effect, put the Lindseys on terms to make it available to them or else allow the Clarks to continue using the one on the north side.

There is no controversy about the controlling facts.

In 1937 the Clarks were the owners of four adjoining lots, Nos. 31, 32, 33 and 34, each fronting 25 feet on the east side of Magnolia avenue in West Waynesboro, and running back 150 feet to a 20-foot alley. The Clark residence was on Nos. 31 and 32.

By deed dated July 24, 1937, the Clarks conveyed to C. W. Six and Mabel G. Six, his wife, the latter being a daughter of the Clarks, the front two-thirds of Lots 33 and 34, being a frontage of 50 feet and extending back 100 feet. On the rear one-third of these two lots Clark erected a dwelling and garage for rental purposes. After this conveyance the Sixes built a house on their property, approximately 15 feet from the Clark line on the north and about 8 feet from their own line on the south. The Clark deed to the Sixes contained this reservation:

"There is reserved, however, a right-of-way ten (10) feet in width, along the South side of the two lots herein conveyed, for the benefit of the property in the rear."

By deed of January 16, 1939, the Sixes conveyed their property to William H. McGhee and wife, with the same reservation; and by deed of March 16, 1944, the McGhees conveyed the property to the Lindseys, without any reservation.

These three deeds were all made with general warranty and both the deed to the Sixes and the deed to the McGhees were duly recorded prior to the date of the deed to the Lindseys.

Notwithstanding that the 10-foot right of way was reserved by Clark along the south side of the property conveyed to the Sixes, now owned by the Lindseys, Clark proceeded to use it along the north side of the Six property, and has so used it ever since, without objection by the Sixes, or by the McGhees, or by the Lindseys until a few months before this suit was brought. There is no explanation of this change of location. Six, a witness for the Lindseys, testified that Clark stood in the driveway on the north and said, "I am reserving this driveway to get to my back property." The time of that statement is not shown, but the words suggest it was at or before the time of the conveyance to the Sixes. When the McGhees bought the property in 1939, Six pointed out to them the driveway on the north, but the

reservation in the deed he made to the McGhees was, as stated, on the south.

In 1946 the Lindseys had their attorney write to Clark, referring to the right of way in the deed to the McGhees, their grantors, and complaining, not of its location, but of its being used for parking purposes. Again, on November 7, 1949, they had their attorney write Clark, calling attention to the fact that the reservation was along the south side of their property and complaining about the use of a water line on their property which had not been reserved. The Lindseys, the letter stated, wanted to erect a line fence and suggested a discussion of the matter before this was done.

The Lindseys contend that the Clarks now have no right of way across their property because none was reserved along the north side and the one reserved on the south side has been abandoned and thereby extinguished. The trial court held it had not been abandoned and that holding was clearly right.

Abandonment is a question of intention. A person entitled to a right of way or other easement in land may abandon and extinguish such right by acts *in pais;* and a cessation of use coupled with acts or circumstances clearly showing an intention to abandon the right will be as effective as an express release of the right. *Scott* v. *Moore,* 98 Va. 668, 687, 37 S. E. 342, 348, 81 Am. St. Rep. 749; *Daniel* v. *Doughty,* 120 Va. 853, 858, 92 S. E. 848, 850; *Magee* v. *Omansky,* 187 Va. 422, 430, 46 S. E. (2d) 443, 448.

But mere non-user of an easement created by deed, for a period however long, will not amount to abandonment. In addition to the non-user there must be acts or circumstances clearly manifesting an intention to abandon; or an adverse user by the owner of the servient estate, acquiesced in by the owner of the dominant estate, for a period sufficient to create a prescriptive right. *Watts* v. *Johnson, etc., Corp.,* 105 Va. 519, 525, 54 S. E. 317, 319. 28 C. J. S., Easements, § 60, p. 724. Nor is a right of way extinguished by the habitual use by its owner of another equally convenient way unless there is an intentional abandonment of the former way. *Scott* v. *Moore, supra,* 98 Va. at p. 686, 37 S. E. at p. 348. 17 Am. Jur., Easements, § 144, p. 1029.

The burden of proof to show the abandonment of an easement is upon the party claiming such abandonment, and it must be established by clear and unequivocal evidence. *Daniel* v.

*Doughty, supra,* 120 Va. at p. 858, 92 S. E. at p. 850; *Blanford* v. *Trust Co.,* 142 Va. 73, 82, 128 S. E. 640, 643.

■ Clark specifically reserved a right of way over the lots now owned by the Lindseys. Very clearly he had no intention of abandoning that right of way. He was evidently mistaken as to where it was located; but his grantees, the Sixes, were likewise mistaken, as were also their grantees, the McGhees. Clark's use on the wrong location of the right of way reserved by him did not establish an intention on his part to abandon his right of way on the right location. He could not have intended to abandon his easement on the south of the Lindsey lots when he did not know that that was where his easement was.

■ The residence built by the Sixes, and now occupied by the Lindseys, encroaches by about two feet on the 10-foot alley when located on the south side, and the Lindsey property on that side within the 10-foot space is terraced and planted with shrubbery and a tree. The Lindseys argue that the Clarks are estopped from claiming a right of way on that side because Clark knew where the Sixes were building the house. The only testimony about that is from Six, who said that Clark was away at work when the house was being built but came and went every day to and from his home on the adjoining property, saw where the house was located and made no objection; but Six also said that Clark had nothing to do with locating the house. There is no evidence that Clark knew, any more than Six knew, that the house was encroaching on the right of way. Clark did not think the right of way was on that side. Even if he had known it was there, he would not likely have known that Six was building on it. The location of the house was not influenced by anything Clark did or said. Clark knew nothing about the matter that Six did not know.

"It is essential to the application of the principles of equitable estoppel, or estoppel *in pais,* that the party claiming to have been influenced by the conduct or declarations of another to his injury, was not only ignorant of the true state of facts, but had no convenient and available means of acquiring such information, and where the facts are known to both parties, and both had the same means of ascertaining the truth, there can be no estoppel." *Lindsay* v. *James,* 188 Va. 646, 659, 51 S. E. (2d) 326, 332, 7 A. L. R. (2d) 597. The Lindseys had both actual and constructive knowledge of the situation. The driveway was

there on the north side when they bought the property and Lindsey testified he could see where cars had been using it. They negligently failed to have their title examined but they are, of course, chargeable with the information contained in the recorded deeds. *Pillow* v. *Southwest Virginia Imp. Co.*, 92 Va. 144, 152, 23 S. E. 32, 34, 53 Am. St. Rep. 804; *Florance* v. *Morien*, 98 Va. 26, 33, 34 S. E. 890, 891; 15 M. J., Recording Acts, § 15, p. 561.

The suit therefore developed this situation: The Clarks were entitled to a 10-foot right of way along the south side of the Lindsey property. That right of way was partially blocked by the Lindsey house with its terraces and shrubbery. To require their removal would be very expensive to the Lindseys and damaging to their property. The Clarks were willing to let their right of way continue to be located on the north side.

The court was well warranted in resolving the matter by applying the maxim "He who seeks equity must do equity." That means that "he who seeks the aid of an equity court subjects himself to the imposition of such terms as the settled principles of equity require, and that whatever be the nature of the controversy between the parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief on the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and demands justly belonging to the adversary party, and growing out of, or necessarily involved in, the subject matter of the controversy." 30 C. J. S., Equity, § 91, p. 461. 2 Pom. Eq. Jur., 5th ed., § 385, pp. 51-2.

A court of equity may in a case in which the principles and rules of equity demand it, condition its granting of the relief sought by the complainant upon the enforcement of a claim or equity held by the defendant which the latter could not enforce in any other way. *United Cigarette Machine Co.* v. *Brown*, 119 Va. 813, 825, 89 S. E. 850, 855, L. R. A. 1917 F, 1100; 2 Pom. Eq. Jur., supra, § 386a, p. 57; 19 Am. Jur., Equity, § 463, p. 319.

The decree of the trial court provided: "The Court will not require the expensive removal of the obstruction, so long as the right-of-way along the north side of the property is made available. However, it is ordered that the defendants desist from the use of the right-of-way for any purpose other than the use of the rear one-third portion of Lots 33 and 34, and only for the

right of passage over and across the said right-of-way to and from the property in the rear." And, further, "Should the complainants make an election under this order, a further order will be entered fixing the rights of the respective parties."

The decree appealed from is affirmed and the cause is remanded for further decree as indicated.

*Affirmed and remanded.*