## CIRCUIT COURT OF THE CITY OF ROANOKE

Jessee Graydon Smith et al.

v.

Gary C. Poff et al.

May 16, 1985

By JUDGE JACK B. COULTER

The demurrer, as we all know, admits arguendo all facts pleaded and all legitimate inferences that may be reasonably drawn therefrom. Opinions and conclusions, however, not being facts, are not included within a demurrant's admission. Much of the plaintiffs' allegations in their amended petition in this case is opinion and conclusionary. The plaintiffs' charges, for instance, that the portion of the driveway in dispute is reasonably essential for their access, that it constitutes an appurtenance and way of necessity, and that it is an easement of implication are all, in fact, conclusions.

The unadulterated facts, pure and relevant, as set forth in the amended petition and the recorded documents referred to therein and the exhibits submitted by the defendants in support of their demurrer[1] may be summarized as follows:

1. The plaintiffs are the owners of New Lot

---

[1] As explained in Boyd, Graves & Middleditch's *Virginia Civil Procedure*, § 8.2, 332 (1982), "documents not so exhibited (in the pleading demurred to) may be made a part of the record for purposes of the demurrer if demanded by the demurrant."

11-A, Block 1, Section 1, South Washington Heights, all of which fronts on Dakota Avenue, a public street.

2. The defendants are the owners of the lot immediately adjacent to the plaintiffs' property on the east, being New Lot 11-B.

3. The plaintiffs purchased their property (New Lot 11-A) from Everette Brisendine, Jr., and his wife by deed dated May 13, 1983. The Brisendines had acquired the property from Lillian D. Parcell Carr and her husband by deed dated September 29, 1978. The Brisendines or their agent (but not the defendants) had assured the plaintiffs that all of the subject driveway was included in the property described as New Lot 11-A. In fact, however, as their metes and bounds description and the duly recorded plat of the property clearly indicated, and as the plaintiffs admit, a part of the subject driveway was not included, but was and is part of the defendants' property.

4. The plaintiffs and their predecessors in title used all of the subject driveway as a "means of access" to their property, claiming it to be a way of necessity to their premises. The driveway was originally built to service the residence now owned by the plaintiffs.

5. The defendants purchased their property (New Lot 11-B) by deed from Lillian D. Parcell Carr and husband dated July 1, 1983, the metes and bounds description clearly conveying to the defendants the portion of the subject driveway in dispute.

6. When Lillian D. Parcell Carr owned all the property of which New Lots 11-A and 11-B were a part, as well as Lot 10-A, she caused two separate duplex dwellings to be built, one on Lot 11-A and one on Lot 10-A, each served by a driveway; that while she was the common owner of these properties and thereafter up to the time of the current dispute, these driveways were used as a "means of access" to Lot 11-A and Lot 10-A.

7. Each of the deeds to the plaintiffs and the defendants recognizes and locates with certainty the common boundary line between New Lot 11-A and New Lot 11-B; that this common boundary line goes down the subject driveway so that a portion thereof is included within Lot 11-B; and that neither of these deeds makes any grant, exceptions, reservations, or any reference whatsoever to any driveway, easement, right-of-way,

reservation, appurtenance, or other rights with respect to the other adjoining lot.

8. The defendants' property fronts for all of its 62.19 feet on Dakota Avenue, a public street. Hence, although the plaintiffs refer to the subject driveway as a "means of access," they have total, uninhibited access to a public street and do not need to go over the property of anyone else in order to reach their property.

In *Haynie v. Brenner*, 216 Va. 722 (1976), one of the cases relied on by both parties, the Haynies claimed as a right appurtenant to their property the use of a driveway and retaining wall on Brenner's adjoining property. The Haynies contended that they had an implied grant based on reasonable necessity and pre-existing use. Some years before, the Brenners owned four lots adjoining each other, referred to as "old lot 1," "lot 1-A," "lot 1" and "lot 2." Old lot 1, now owned by the Haynies, is located at the southeast corner of West Ridge and Burnleigh Roads and abuts both public streets. Lot 1-A, also now owned by the Haynies, lot 1 and lot 2, in that sequence, lie east of old lot 1 and front only on Burnleigh Road (see sketch at page 725 of the decision).

In 1958 the Brenners built a house on old lot 1 which they occupied. To provide access to their home, the Brenners constructed a circular driveway and retaining wall on old lot 1 (now Haynies), lot 1-A (now Haynies) and lot 1 (retained by the Brenners). This driveway, which circled behind the dwelling, had one entrance on old lot 1 at the intersection of West Ridge Road and Burnleigh Road. Because of the steep terrain the other entrance (or exit) was on lot 1 from Burnleigh Road.

During the time that the Brenners occupied the home, they ordinarily used the most convenient entrance for ingress and egress to and from their premises. After the Haynies acquired the property in 1965, they regularly used both entrances until July 5, 1972, when they were notified by Brenner to stop using the entrance on Burnleigh Drive and that portion of the driveway which was on lot 1. As the Brenners before them, the Haynies ordinarily entered the driveway by the West Ridge Road entrance and left their premises by way of Burnleigh Road. The driveway and retaining

wall, however, never served the purpose of ingress and egress to lot 1 and lot 2.

The trial court, relying on *Fones v. Fagan*, 214 Va. 87 (1973), found that no way of necessity could be implied as the Haynies had access to their property from West Ridge Road and that, while it might be more convenient to exit from their property over the driveway on the Brenners' property to Burnleigh Road, it was not necessary.

It is difficult to imagine a clearer analogy to the instant case than the *Haynie* decision. The principle established, however, applies with even greater persuasion to the defendants in the present dispute because in *Haynie* the original landowners, the Brenners, who might be bound by some kind of estoppel, were the ones denying a use which they had permitted for years. There is simply no "reasonable necessity" for the plaintiffs at bar to go over portions of the defendants' property to reach Dakota Avenue when *all* of their property already fronts on that public street. It might be more convenient for them to use the existing driveway, but to do so would be using the property of another without compensation or consideration. Portions of what the plaintiffs conceive to be their driveway were simply not deeded to them, but were by instrument of general warranty and precise description conveyed to the defendants. Mistakes may have been made in the description of the boundary line, but in such event the fault is not that of the defendants.

The facts in the *Fones* case likewise give the plaintiffs no comfort. As in the case at bar, Fagan was not only not landlocked but actually fronted 115 feet on Hunter Mill Road. As stated by Justice Cochran:

> If another means of access exists, though less convenient or more expensive to develop, no way of necessity arises.

And further:

> To hold that an easement by implication exists here (as in the case at bar) would run counter to the purpose of the recording statutes, would derogate from an explicit

warranty deed and might seriously impede the development of future subdivisions.

The other case relied on by the plaintiffs, *Scott v. Moore*, 98 Va. 668 (1900), in which an implied easement was recognized, is clearly distinguishable from the facts at bar for the lots in *Scott* were sold by a common owner *at the same time*, involved interior and exterior lots, and concerned sewer drainage in the bed of an alley way.

When the hostility between two neighbors has reached the extremes that apparently characterizes this dispute, it is regrettable that one side is apparently cut off from his full day in court by virtue of a legal ruling sustaining a demurrer. Yet, on the other hand, it would be postponing the inevitable, and aggravating expenses as well as feelings, to allow this contest to continue when as a matter of law, under the facts and circumstances of this case with deeds of warranty so exact and boundary lines so clear, one who fronts entirely on a public street simply cannot claim a portion of a driveway that encroaches on a neighbor's property to be an easement of necessity or implication or some kind of appurtenant or dominant right over a servient tract. Whatever claims the plaintiffs might have cannot be laid to the defendants' charge, other than childishness and a rude lack of civility in putting up iron stakes through an existing driveway, which is hardly the act of a good neighbor.

Because the several photographs submitted illustrate the problem otherwise described in the exhibits, they are hereby made a part of the record.

The demurrer is sustained and the case accordingly dismissed.