# Richmond.

## SANDERLIN V. BAXTER.

### March 23, 1882.

1. EASEMENTS.—Whenever one of two tracts owned by same person, an easement exists in favor of the other, and one is conveyed, whether the easement passes depends on the terms of the grant. If expressed, the terms prevail ; if not expressed, its passage, as incident, will be presumed when the easement is *apparent, continuous,* and *necessary.*

2. IDEM—*Injunctions.*—Easements annexed to private estates will be protected by injunction where the injury would be irreparable—that is, an injury which is grievous, or material, and not adequately reparable by damages. Where the easement has long been enjoyed, and delay would be disastrous, the right will not be required to be first established at law.

3. CASE AT BAR.—" Woodlawn " and " Fairfield," separated only by public road, were owned by W, who drained former by ditches through latter to river. In 1811 he granted " Woodlawn " to A· (under whom plaintiff claims). In 1820 he devised " Fairfield " to D (under whom defendant claims). Deed and will are silent about draining. In 1878 defendant undertook to stop up the ditches, and plaintiff obtained an injunction. When ·' Woodland " was granted, the ditches were open and visible, and, except for a brief time, had been used continuously to drain it. It could be drained in no other way, except by heavy expenditure. They were necessary to the proper enjoyment of the premises.

HELD :

1. In this case injunction lies.

2. The injunction was granted by the county judge, and perpetuated by the circuit court. If the former had no such authority, his order was simply inoperative ; and the circuit court had authority at the hearing to award the injunction.

3. *Quære :* Has a county judge authority to award an injunction? Code 1873, ch. 174, § 6, and ch. 154 § 4, Acts 1874, ch. 144, § 4.

Appeal from decree of circuit court of Norfolk city in suit of Oscar F. Baxter against Willis B. Sanderlin, perpetuating an injunction to prevent encroachment on plain-

tiff's easement appurtenant to his estate "Woodland," over the defendant's estate "Fairfield." From this decree Sanderlin obtained an appeal to this court. Opinion of court gives the facts.

*Burroughs & Bro.* and *L. D. Starke,* for appellant.

1. Upon overruling demurrer and motion to dissolve, cause should have been continued for final hearing on its merits. 1 Dan. Ch'y Pr. 1780; High on Injunctions, § 3 and § 935.

2. Injunction perpetuated, was granted by a county judge in vacation, who was without such authority.

3. Doctrine that an "old existing right" of easement may pass by grant of the land to which it is attached does not apply where grantor owns both dominant and servient tract. *Scott* v. *Bentel,* 23 Gratt. 6; *James* v. *Plant,* 4 A. & E. 749; *Thompson* v. *Waterlaw,* Law Reports, 6 Eq. Cases, p. 36; *Tabor* v. *Bradley,* 18 N. Y. 109; *Spaulding* v. *Abbott,* 55 N. H. 423; *Standiford* v. *Gondy,* 7 West Virginia, 364.

4. The right of drainage did not pass by deed of 1811, under doctrine of "heritages." Washburne on Easements, § 25. The easement was *discontinuous*—*i. e.,* requiring man's interference to make it efficient; and it must be shown to be *absolutely* necessary to the enjoyment of the premises granted. *Lampann* v. *Milks,* 21 N. Y. pp. 515–16.

5. The right to easement being disputed, the courts will ordinarily first require title to be established at law. Washburne on E. p. 698 ; High on Inj. § 486.

6. The right to drainage was not established by prescription. That requires use under claim of right exclusive, continuous, and uninterrupted. Such was not the case here. The use was interrupted from 1811 to 1816 ; from 1816 to 1854 it was tolerated by the life tenant, which user did not affect the reversioners. In 1856 it was denied by the re-

versioners, and the drains closed. Plaintiff attempted to have a drain *condemned*, and finally abandoned it. In 1859 he purchased the right of Brickhouse, who then owned "Fairfield," subject to a trust deed, under which it was sold in 1866, and plaintiff's purchased right ceased.

7. No facts are stated in the bill to show the injury was irreparable in damages. Mere easement is insufficient. High on Inj. § 35 ; 2 Sto. Eq. § 925.

*Ellis & Thom*, for appellee.

BURKS, J., delivered the opinion of the court.

The appellant assigns as error in the decree of the circuit court, that the cause was prematurely heard and disposed of on the merits. It is claimed that it was submitted solely on a motion to dissolve the injunction, and that it was not ready for hearing. This is said in argument, but does not appear to be supported by the record. It is true, there was a motion to dissolve the injunction, but the case was ripe for hearing, and the decree shows that it was fully head upon the pleadings and proofs. The judge evidently considered the cause to be so submitted, and not merely on the motion to dissolve. If by this action the appellant was taken by surprise, his remedy was plain. As soon as the decree was pronounced, and during the term, he should have applied to have the decree set aside, except so far as it related to the motion, and this application, if denied by the court, should, with the grounds on which it was made and rejected, have been spread on the record, so that this court might be enabled to see whether the refusal was error or not. The record discloses no such application or action of the court, and in a court of errors the maxim is *quod non apparet non est*. We can only look to the record, and in that we find no such error as is complained of.

The original injunction was granted by a judge of the county court in August, 1878, and was made perpetual by the decree of the circuit court. This is assigned as error on the ground that the judge of the county court had no authority, under the statutes, to award an injunction. (See Code of 1873, ch. 154, § 4; ch. 175, § 6; Acts of 1874, ch. 144, § 4.)

It is needless to inquire or decide whether the judge of the county court had the jurisdiction he exercised. Both bills prayed for an injunction, and if the judge had no power to award it, his order was merely inoperative. But the circuit court, nevertheless, had the right at the hearing to award an injunction "although not prayed for in the bill," if "it was necessary for the purposes of complete justice" (Kerr on Injunctions, ch. 29, § 4, p. 637), and hence might adopt the previous order as its own, as it did in effect by making it perpetual.

As to the merits. We do not propose to discuss the evidence in detail. It is sufficient to give our conclusions.

Anthony Walke, Sr., was the owner of two tracts of land, "Woodlawn" and "Fairfield," in the county of Princess Anne. By deed, in November, 1811, he conveyed "Woodlawn" to his son, Anthony Walke, Jr., and in 1816 by his will he devised the other tract, "Fairfield," to his son David M. Walke, with a contingent limitation to the children (except the said Anthony) of the grantor. The appellant, Sanderlin, claims title to "Fairfield" under this devise and subsequent conveyances. At the date of the conveyance of "Woodlawn" the two farms were, as they are now, separated by a public road. Topographically, "Woodlawn" is higher than "Fairfield." While Anthony Walke, Sr., was the owner of both farms, several ditches or drains had been cut for some distance on the "Woodlawn" tract to the intervening road and across it into and through the "Fairfield" tract, so as to connect with the eastern branch of

Elizabeth river. At the time "Woodlawn" was conveyed as aforesaid, these ditches or drains were open and visible, and were then, as they still are, necessary for the convenient and beneficial use and enjoyment of the "Woodlawn" tract. They were constructed to carry off the surface water and prevent its accumulation on that farm, and the draining could be effected by no other means at reasonable cost and expense. It seems that after Baxter acquired "Woodlawn," he did cut a ditch through his own land to Deep Branch; but this was done to drain the land owned by him and not embraced in the Walke deed, and was closed to protect his crops from the water thrown upon his land by Sanderlin's stopping the ditches before mentioned. The very decided weight of the proof is, that "Woodlawn" can not be effectually drained to Deep Branch without a heavy expenditure of money, and that the ditches through Sanderlin's land are essential to the draining. These ditches have been used to drain "Woodlawn" ever since they were first cut, continuously, with the exception of a short period, until they were obstructed by Sanderlin in 1878, which caused Baxter to file his bill.

Upon these facts, although the right to the use of the ditches as an easement was not given in express terms by the deed of the elder Walke to his son, under whom Baxter claims, yet we are of opinion that it passed with the land granted as an incident.

This doctrine of the grant of an easement by implication, under circumstances such as have been stated, seems now to be well settled. The whole subject has been thoroughly and elaborately considered and discussed in Washburn on Easements, ch. 1, § 3, and the numerous adjudged cases, English and American, carefully collated and examined. We do not propose to go over the cases. "The ground," says the author, "upon which this doctrine both of the French and the common law rests seems to be, that

where the owner of two heritages, or of one heritage consisting of several parts, has arranged and adapted these so that one derives a benefit or advantage from the other of a *continuous* and *obvious* character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect to the other, there is in the silence of the parties an *implied* understanding and agreement that these advantages and burdens, respectively, shall continue as before the separation of the title." Washburn on Easements, ch. 1, § 3, pp. 54–5.

Having adverted to the rule of the French law, he remarks that, "the same principle has been adopted, by analogy, to a greater or less extent, by different courts, as a basis of construing grants, though it is believed that the common law, in order to give this effect, requires that what is thus claimed as a servitude or easement should be reasonably, and in some cases absolutely *necessary* as well as *continuous* and *apparent.*" *Idem,* ch. 1, § 3, pp. 56–7.

Again, after citing and giving the substance of many decisions, he says, "although it might, perhaps, be difficult to embody the leading doctrines of the foregoing cases into any general proposition, it would seem that, in case of a division of an estate, consisting of two or more heritages, whether an ease or convenience which may have been used in favor of one, in or over the other, by the common owner of both, shall become attached to the one or charged upon the other, in the hands of separate owners, by a grant of one or both of those parts, or upon a partition thereof, must depend, where there are no words limiting or defining what is intended to be embraced in such deed or partition, upon whether such easement is necessary for the reasonable enjoyment of the part of such heritage as claims it as an appurtenance. It must be *reasonably necessary* to the enjoyment of the part which claims it, and where that is not the case, it requires descriptive words of grant or reser-

vation in the deed, to create an easement in favor of one part of a heritage over another." Id., ch. 1, § 3, pp. 88–9.

These principles were recognized by this court in *Scott and others* v. *Beutel and others,* 23 Gratt. 1 ; and *Hardy* v. *McCullough and others,* id. 251. And in the latter case Judge Bouldin, after quoting from the opinion of the court delivered by Judge Christian in the former case, observes "that the question whether an easement or servitude will be created, or pass as an incident to or part of the property granted, is a matter of contract, and must, of course, depend on the intention of the parties, as expressed in the contract. If thus expressed, the terms of the contract must control its construction. *When not thus expressed, the construction will be controlled by the use and condition of the property at the time of the sale, and certain implications and presumptions of law arising thereon.*" See also *Burwell* v. *Hobson,* 12 Gratt. 322.

In the present case, the easement was *apparent, continuous* and *necessary,* as we think, and, in our opinion, passed as an incident of the grant under the deed of November, 1811.

It is clearly established, that the obstruction of the ditches would cause a large accumulation of water upon Baxter's land near his residence, which would of necessity become stagnant, and thus not only seriously impair the value of the land, but, in the opinion of the medical witnesses, would, in that malarial country, produce disease.

Sanderlin commenced the obstruction, and was restrained by injunction, and the only remaining question is, whether a bill would lie in such a case. We have no doubt that it would. Where easements or servitudes, says Mr. Justice Story, are annexed by grant, or covenant, or otherwise, to private estates, the due enjoyment of them will be protected against encroachments by injunction. 2 Story's Eq. § 927. Baxter has a remedy by action at law, but it is inadequate. Damages in repeated suits would not compensate in such a case. The injury is irreparable, and calls

for a preventive remedy such as a court of equity only can furnish. That court constantly interposes by injunction, where the injury is of that character. "By the term 'irreparable injury,'" says a learned author, "it is not meant that there must be no physical possibility of repairing the injury; all that is meant is, that the injury would be a grievous one, or at least a material one, and not adequately reparable in damages." Kerr on Injunctions, ch. 15, § 1, p. 199.

The injury to Baxter's land would be "material," and disease and death merely would be "grievous." For such injuries there could be no just compensation in dollars and cents.

Ordinarily, where the existence of a nuisance (and in a general sense every violation of an easement may be considered a nuisance, High on Injunctions, ch. 12, § 544) is controverted, the party seeking the interference of a court of equity will generally be required first to establish his right at law. But it is said that in cases (like the present) where the plaintiff has been long in the exercise of his right, or where delay would be disastrous, the court will not require the right to be first established at law. 2 Story's Eq. Jurisp. (11th ed.), § 925 f. and cases cited in note. See also what is said by Judge Staples in *Manchester Cotton Mills* v. *Town of Manchester*, 25 Gratt. on pp. 831, 832. An issue to try the right was not regarded as indispensable in *Pruner & Hubbles* v. *Pendleton and others*, 1 Matthews, 516—a case in which a bill was filed to restrain the use of a building in a town as a slaughter-house.

The views which have been expressed support the decree of the circuit court and it will be affirmed.

DECREE AFFIRMED.