### Staunton

### MUSE AND OTHERS V. GISH.

September 9, 1912.

Absent, Cardwell, J.

1. EASEMENTS—*Roads—Ways of Necessity—Case at Bar.*—A roadway established by a testator in his lifetime during his ownership of an entire tract of land, will, if reasonably necessary and convenient, be continued for the use and benefit of his devisees and those claiming under them, upon a division of the land under the provisions of the testator's will. The rules governing ways of necessity apply to the facts of the case at bar.

Appeal from a decree of the Circuit Court of Roanoke county· Decree for the defendant. Complainants appeal.

*Reversed.*

*Kime & Fox,* for the appellants.

*W. W. Ballard, J. E. Gish, Jackson & Henson,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

This is an appeal from a decree dissolving a preliminary injunction and dismissing the bill in a suit brought by the appellants to injoin the appellee from obstructing the plaintiffs in the use and enjoyment of a private roadway affording them means of outlet from their respective properties, which are entirely surrounded by the lands of private parties, through Lot No. 1, the land of the defendant, to the "Vinton Public Road."

The following is a copy of the map referred to in the opinion of the court:

The obstructions complained of were occasioned by the defendant plowing up a portion of the private roadway and locking the gates opening into the same and into the public highway. The property affected consisted originally of 405 acres of land, situated in Roanoke county near Vinton, and belonged to John B. McClung, who died testate in the year 1901. Shortly after the death of testator the land was partitioned amongst his devisees. Lot No. 1, containing 67 acres, was allotted to his granddaughter, a Mrs. Jones, and was afterwards purchased by the appellee, G. G. Gish.

For many years during the lifetime of John B. McClung there was a private roadway, known as the old road, leading from the mansion house to the "Vinton Public Road" at the present outlet. The route of the old road was from the mansion house, passing a white oak at station 16 (on a map filed with the record) to Berkeley's corner; thence, in part over and along Berkeley's line to station 15, and thence off through what is now Lot No. 1, by station B, to station A, on the public highway. Several years prior to McClung's death a dispute arose between himself and Berkeley touching the correct location of the dividing line between them from station 16 to station 15, the latter claiming to the center of the road. The line was eventually surveyed, and Berkeley erected a line fence in the middle of the roadway from 16 to 15. Thereupon, McClung discontinued the old road between those points, and from 15 to B, and established what is now known as the new road, a straight road from 16 to B, thus providing a continuous road over his own land from the mansion house to the public road at station A. The portion of the old road from 16 by 15 to B, on McClung's side, was wholly discontinued and plowed up, and since that time has been under cultivation as other parts of the farm.

We have not undertaken to discuss the evidence in de-

tail, but merely to give our conclusions therefrom. The foregoing summary is sustained by the preponderance of the testimony, and is an accurate presentation of the situation at the death of McClung, at the time the commissioners partitioned the land amongst his devisees, and at the date of appellee's purchase of Lot No. 1.

When appellee bought Lot No. 1 the new road had been established for several years, and was apparent and necessary, and in continuous and uninterrupted use by the appellants. Moreover, the defenses relied on by the appellee show that he purchased Lot No. 1 with actual knowledge of the existence of the new road. Thus, he proved by T. B. Jones, the husband of his vendor, that McClung discussed with him a purpose on his part to discontinue the new road and to open in place of it another road along the route of the old road. But, however that may have been, McClung did no act in furtherance of such intention, but continued to use the new road as long as he lived.

Gish also attempted to prove by Jones a parol agreement between them, which he says was acquiesced in by "the heirs," to change the location of the new road to its original position. Yet if any such agreement was made, it was inchoate, and was never attempted to be consummated.

The remaining ground of defense involves the contention that appellants had another outlet to a public road by a private way over the land of W. G. Wood. But this allegation is wholly disproved and seems to have been abandoned.

The roadway in question having been established by John B. McClung during his ownership of the entire boundary of 405 acres of land, it will, if reasonably convenient and necessary, be continued for the use and benefit of his devisees (and those claiming under them) upon a

division of the land under the provisions of testator's will. The rules of law governing ways of necessity apply to the facts of this case; and the decisions of this court abundantly sustain the rights of appellants to the unobstructed use of the roadway established by John B. McClung from the mansion house to the point of connection with the "Vinton Public Road" at station A. *Hardy* v. *McCullough,* 23 Gratt. (64 Va.) 259; *Deacon* v. *Doyle,* 75 Va. 258; *Sanderlin* v. *Baxter,* 76 Va. 299, 44 Am. Rep. 165; *French* v. *Williams,* 82 Va. 462, 4 S. E. 591; *Bond* v. *Willis,* 84 Va. 796, 6 S. E. 136; *Scott* v. *Moore,* 98 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749.

For these reasons the decree of the circuit court must be reversed and this court will make such decree as the trial court ought to have made, perpetuating the injunction, with costs.

*Reversed.*