# Richmond.

## TURNER v. SOUTH AND WEST IMPROVEMENT COMPANY AND OTHERS.

### March 16, 1916.

#### Absent, Keith, P.

1. EASEMENTS—*Way of Necessity—Prescription.*—A right of way by necessity attaches, if at all, at the time of the partition of the servient and dominant estates, while a right of way by prescription imports the acquisition of the estate by exclusive, uninterrupted, continuous and adverse use and enjoyment for twenty years with the knowledge and acquiescence of the owner of the land.

2. EASEMENTS—*Way of Necessity—Another Way.*—A right of way of necessity does not arise if there be already another mode of access to the land, though much less convenient, or more expensive to develop.

3. EASEMENTS—*Prescription—Burden of Proof—Case at Bar.*—If a party claim a right of way by prescription, the burden of proof rests upon him to establish it. In the case at bar, this burden has not been sustained, nor does a right of way of necessity exist.

Appeal from a decree of the Circuit Court of King George county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*C. O'Conor Goolrick, W. A. Rose* and *Thomas L. Hunter,* for the appellant.

*A. T. Embrey,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This appeal is from a decree dismissing the bill in a suit by appellant to establish a private right of way from his farm

"Woodlawn" across the "Waltsingham" farm of appellees, to the public road at Port Conway on the Rappahannock river in King George county.

Formerly these two farms, together with the Pratt tract and several smaller parcels of land, belonged to Richard Turner and constituted one estate called "Waltsingham." Waltsingham was bounded on the north by a public road, on the east by the "Oakenbrough" estate, on the south by Rappahannock river, and on the west by the public road leading from Port Conway in a northerly direction to the public road mentioned above. Richard Turner died in 1829, having devised the eastern half of "Waltsingham" to his son, Richard Henry Turner, and the western half to his son, Albert Turner. The will directed the dividing line between these properties to be run from the river on the south to the public road on the north. Title to the western moiety, "Waltsingham," by successive devises and conveyances, devolved upon appellees. Richard Henry Turner, grandfather of appellant, in the year 1893, cut off from the easterly moiety 200 acres on the north, and by deeds of even date conveyed that boundary, the "Pratt" tract, to his daughter, Mrs. Eliza H. Pratt, and the residue, of "Woodlawn," to his son, Henry Vivian Turner, father of appellant, who afterwards devised "Woodlawn" to his wife and appellant, who subsequently inherited his mother's portion.

Appellant claims a right of way from *necessity* and by *prescription* over the road in controversy, which claims are not altogether consistent, since the right to the former must have attached, if at all, at the time of the partition of "Waltsingham," while the latter imports acquisition of the easement by exclusive, uninterrupted, continuous and adverse use and enjoyment for twenty years with the knowledge and acquiescence of the owner. *Gaines* v. *Merriman,* 95 Va. 660, 666, 29 S. E. 738; *Reid* v. *Garnett,* 101 Va. 47, 48, 43 S. E. 182; *Williams* v. *Green,* 111 Va. 205, 68 S. E. 253; *Kent* v. *Dobyns,* 112 Va. 586, 72 S. E. 139; *Witt* v. *Creasey,* 117 Va. 872, 86 S. E. 128.

In the lifetime of Richard Turner there were a number of plantation roads and trails leading in various directions over "Waltsingham," as the convenience of the owner dictated, including a road located in general course along the route of the way now in dispute. Obviously, no easement of way could have arisen at that time, because there cannot be an independent easement in the owner of the fee simple estate. When "Waltsingham" was divided the eastern half, as observed, was bounded on the north by a public road, and from that public road there is a private road leading directly to the "Woodlawn" mansion, which has existed "time out of mind," with a gate on the public road bearing the inscription "Woodlawn Entrance." It is true the way afforded by that route from "Woodlawn" to the village of Port Conway is not as convenient as the private road over "Waltsingham;" still, it was in proof that the distance between the two points could be covered by a pony with a buggy driven at a jog-trot in half an hour.

The doctrine of ways by necessity is succinctly stated in 1 Minor on Real Property, section 103, as follows: "From principle, it would seem that if there already be another mode of access to the land, though much less convenient, or more expensive to develop, the reason for the inference of a grant of a way by necessity ceases."

At the date of the partition of "Waltsingham," Richard Henry Turner was the absolute owner of "Woodlawn" and the land to the north of it abutting on the public road, across which the private road extended. So, at that time no reason existed for a way by necessity over "Waltsingham." And the record does not show that Richard Henry Turner's successors in title, including appellant, have in any manner lost or been deprived of that outlet. *Muse* v. *Gish,* 114 Va. 90, 75 S. E. 764.

Of appellant's second contention, namely, that he has a right of way by prescription, the burden of proof rests upon him to establish it. *Witt* v. *Creasey, supra.* That he has

failed to sustain that burden the record plainly shows.  George Turner, Sr., perhaps, knows more of the genesis of this claim than any living witness.  He was a son of Richard Turner and brother of Albert and Richard Henry, and subsequently himself became the owner of "Waltsingham," where he passed many years of his life.  He was ninety-four years old when he gave his deposition, but, nevertheless, testified with such clearness and intelligence as to show that his mind was undimmed by age.  He remembered his father and the ways in use in his time, and testified that he repeatedly had made partial changes of location in the road across "Waltsingham" to accommodate his brother.  In like manner, he used the private roads over "Woodlawn," especially the road to his brother's mill, of which he was a customer; yet, neither claimed this user (which was in common with other neighbors) as a legal right. It was nothing more than an interchange of courtesies between brothers and friends.  The same attitude with respect to those ways was maintained by their successors in title, including appellant.  But aside from other evidence, the correspondence between appellant and appellees affords convincing proof that his claim is not well founded.  By that correspondence appellant sought and obtained from appellees the privilege of using the private way, but with the distinct understanding that it was matter of favor, and conferred no permanent right of way upon appellant, and was revocable at the will and pleasure of appellees.  In consequence of repeated trespasses by appellant's stock upon the premises of appellees, they were constrained to revoke the license, and notified appellant of their purpose to close the road against him.  This litigation followed, and resulted in a decree dismissing the bill, which decree is plainly right and must be affirmed.

*Affirmed.*