## Richmond.

### JOSEPH S. WHITMORE AND HORACE C. LITTLEJOHN v. MARGARET PAXTON MEMORIAL FOR CONVALESCENT CHILDREN, A CORPORATION.

December 6, 1928.

The opinion states the case.

*Cecil Connor* and *Buford & Raney*, for the appellants.

*Barbour, Keith, McCandlish & Garnett*, for the appellee.

CRUMP, P., delivered the opinion of the court.

I am unable to agree with Judge Christian in this case. In my opinion, the conclusion reached by the learned judge of the trial court was clearly right and his final decree should be affirmed.

Judge Christian has given an outline of the leading facts in the case, so that it is unnecessary to repeat them in connection with the expression of my views.

It is essential, however, to bear in mind what was done by the parties and the sequence in which the events occurred.

█ Mrs. Paxton, the owner of the entire farm, embracing some 850 acres, at the time of her death had lived upon it for a long period of years, was thoroughly acquainted with its use, and, evidently, after much consideration, had concluded before she made her will exactly how she would dispose of it. The predominant thought running through the entire will is her beneficent intention to devote practically this entire valuable estate to the charitable institution by which she proposed to perpetuate her memory. In order to carry out her intention, in the first place she directed that the dwelling house and fifty acres of land, which would carry the house and lawn and garden and all such surroundings, and also the exclusive and unobstructed use of the private roadway leading from the house and its surroundings to the public road, be dedicated in *specie* to the use of a memorial home she was establishing. In order to place this beyond question, she made a specific devise by which she gave to the institution fifty acres of land, so selected as to include the house and buildings and the driveway and hedge leading out to the turnpike road. She did not give the road or roadway, or its use, but she directed that it should be included in the fee simple ownership by which the Convalescent Home was to hold the fifty acres. The roadway might lie within the center of the fifty acre tract, or in any part of it, according to the lines which might be most satisfactorily and conveniently run. This will was probated in June 1922. It required that the Margaret Paxton Memorial for Convalescent Children should be incorporated

and prepare to carry out the objects of its establishment within three years. Accordingly, the two executors, in order to leave no question open, instituted a suit, in which the personal property was wound up, and, it being shown that the institution had been incorporated and was ready to receive a deed, the court authorized the deed for the fifty acres to be made. The executors then proceeded to select and mark out the fifty acres in accordance with the terms of the will and make a conveyance of it. A surveyor was engaged and he made a survey of the fifty acres, a sketch of which appears in Judge Christian's opinion. That sketch, however, does not show the actual courses and distances which appear upon the survey as reported by the surveyor. This survey shows that the fifty acres was included within boundaries appearing by courses and distances. It commences at the intersection of Babson's line, as shown upon the plan, with the State highway, thence running thirty-two feet on the line of the highway to an iron pin, which was evidently beyond the hedge, thus giving the fifty acre tract a frontage of thirty-two feet on the highway, including the width of the private road, and to a point beyond the hedge, along the side of the road, fixed by the iron pin. The lines were then run from point F on the plat by courses and distances to point G, and, along on the other lines appearing, back to point A, the beginning. When the deed was first prepared it seemed that the executors desired to reserve to the future purchasers of the remainder of the property a right-of-way over the roadway. Thereupon the secretary of the Paxton Memorial addressed to one of the executors the following letter:

"Leesburg, Virginia, October 4, 1923.
"Dr. W. C. Orr,
 "Leesburg, Virginia.
"Dear Sir:

"I have consulted with all the members of the board of trustees of the Margaret Paxton Memorial for Convalescent Children, in respect to the provision in the proposed deed, a copy of which you handed me, which reserved to the purchaser, or purchasers, of the residue of the farm the right-of-way over the roadway.

"The board and its counsel are of the opinion that as it was provided in the will of Mrs. Paxton that the fifty acres to be conveyed to the corporation should include the roadway, there should be no reservation in the deed, and that the road be, unconditionally, conveyed to the corporation.

 "Yours very truly,
 "A. Debrill, *Secretary.*"

The executors receded from their position and changed the deed accordingly, retaining, however, the original date of the deed, September 5, 1923. The deed was signed and acknowledged by the two executors in November, and admitted to record, together with the survey and plat made by the surveyor, on December 2, 1923. This deed is between the executors, as such, and the Margaret Paxton Memorial for Convalescent Children, a corporation. It recites the will and the provision in it devising fifty acres, together with the house and buildings and driveway and hedge, to the grantee. It further recites the fact that the corporation had been duly and legally organized and was entitled to have and receive from the executors a deed for the fifty acres, according to its description; and then recites: "And, Whereas, said executors were di-

rected to convey said land unto the said party of the second part; and, whereas, in order to make said conveyance said executors did direct W. C. Whitmore, surveyor for Loudoun county, to go upon said land and make a survey thereof and furnish a plat of the same for the purpose of making said conveyance; and whereas, said plat and survey are acceptable to the officers acting in behalf of the said party of the second part." The deed proceeds to convey the property, "the metes and bounds whereof, according to the survey of the said Whitmore, are as follows." Then follows the description of the metes and bounds by courses and distances, commencing at point A above mentioned and brought around to the same point of beginning by fifteen or more courses and distances. The deed also recites that the plat of land was attached to it and would be recorded with it, which was done. The plaintiff in the instant case thereby acquired title and ownership in fee simple to the exact fifty acres devised to it by the testatrix. The executors very properly upon the protest of the trustees of the Paxton Memorial conveyed the fifty acres in obedience to the terms of the will. Whatever their powers may have been in respect to their authority to sell the residue of the real estate, those powers were transcended by any subsequent attempt they might make to impose any limitations, conditions or burdens upon the real estate conveyed to the memorial. It appears that the question of the fifty acres being burdened with an easement, in favor of future purchasers of the residue of the real estate, of the use of the private road out to the State highway again came up. It further appears that at a proposed auction sale of the residue, comprising a little more than eight hundred acres, the executors, or one of them, was of opinion that the purchaser of the

residue would acquire a right, in the nature of an ease-ment, to the use of the private roadway out to the highway. No sale was made at the public auction and the deed mentioned to the purchasers of the entire residue, with the exception of three acres, executed in January, 1926, was made without the grant of any such right or any easement by the surviving executor, one of the executors having in the meantime died. There is much evidence in the record as to the use of the entire farm or property for a long period of years during the lifetime of Mrs. Paxton and during the prior lifetime of her husband, which it seems to me is, in fact, not material to the consideration of this case. The testa-trix had a right to do with her property what she chose. If there was any appurtenance or easement created by her it was exclusively attached to the fifty acres, and affirmatively the enjoyment thereof excluded from any future owner of the balance of the property. To imply any intention on her part to place any burden upon the fifty acres devised specifically is entirely inconsistent with the language of the specific devise and with the general intent of her will. The language needs no explanation and admits of none. Explanation can only amount to alteration and an endeavor to defeat the intention of the testatrix. The executors properly con-veyed the fifty acres as directed by the will. The complete equitable ownership was in the devisee up to that time, and the executors held only the mere legal title. After their conveyance they had no power of any sort in connection with the fifty acres. Their functions in that respect had altogether ceased. The executors had only such powers as were given them by the will and the codicil. The only duty, as well as the only power, conferred and imposed upon the executors was to convey the property to the corporation as soon

as practicable. The surviving executor of Mrs. Paxton, in the light of the preceding facts and his own acts in the premises, was not authorized to lead the appellants to believe they could acquire any rights in the roadway and hedge, or any part of the fifty acres. It also appears that the two purchasers, Whitmore and Little-john, before the deed was executed to them in 1926, knew of the recorded deed made in 1923, and they bought with full knowledge of all the facts. Learned counsel for the appellants make an exhaustive argument based upon the theory that there was a severance of the estate as owned by Mrs. Paxton, and, hence, any appurtenance or easement reasonably necessary to the enjoyment and use of the property bought by them passed to them as grantees. The technical doctrine as to ways of necessity need not be discussed. The question is as to the acquisition by implication of a right or easement to use the roadway in question out to the highway passing with the grant to the pur-chasers, because of its prior use during the entirety of the estate for general farming purposes. It was shown and was necessarily a fact that this roadway had been used by Mrs. Paxton and, no doubt, by servants, visitors, tenants of the property, or portions of it, and the entire entourage connected with such an domestic establishment as Mrs. Paxton conducted. So far as the tenants are concerned, it is said by Mr. Leonard A. Jones in his work on easements, section 284: "Of course, if one enters as the tenant of another, or holds under and by contract in any way, he cannot acquire any prescriptive right while he thus holds, nor will any portion of the time during which he thus holds be counted in making out the prescriptive right." Counsel make reference to section 5168 of the Code prescribing that all appurtenances pass with the grant of real

estate. This is merely an affirmation of the common law. 2 Minor on Real Property, page 1259.

It is an established doctrine of the law that where an owner of an entire estate disposes of it simultaneously in two different tracts there may arise an easement in favor of one of the tracts upon the other by implication. If that doctrine does not apply to this case, then the claims of the appellants must fail. In the recent case of *Prior* v. *East* (March, 1928), 150 Va. 231, 142 S. E. 361, we find the latest expression on this subject of our Court of Appeals. Quoting from Washburn on Easements with approval, it is there stated that in case of division of an estate an easement or roadway which has been used in favor of one portion over the other by the common owner of both may become charged upon one in favor of the other in the hands of separate owners, depending, however, "where there are no words limiting or defining what is intended to be embraced in such deed or partition," upon whether such easement is necessary for the reasonable enjoyment of such heritage or portion of the property as claims it as an appurtenance. We need go no further for authority. In the instant case there are words limiting and defining exactly what the testatrix intended, as has already been shown. She intended to make and did make a specific devise of a part of the real estate to the proposed institution, and it was accompanied by the distinct requirement that the fee simple title to and absolute ownership of the land upon which the road and hedge were located shall be included in the fifty acres. There is no indication or suggestion that this ownership and complete dominion shall be clogged with any burden, condition or easement. The testatrix had a right to so dispose of her property, and it was natural, under the circumstances

disclosed in the record, that she should have excluded all others from any use of or participation in the roadway because of the uses to which she dedicated the fifty acres. She doubtless had in mind that the residue of the property had a frontage of five thousand feet on the same highway out to which this roadway led. She could not foresee whether the residue of eight hundred acres would be sold as a whole, and she negatived any idea that she was establishing any burden or easement upon the fifty acres, or any part of it. The supreme thought in the mind of the testatrix, intensified with the passing of the years, was the creation, development and permanent maintenance of the Paxton Memorial. She doubtless foresaw that the safety of the home, designed as a place where the irresponsible wards of her charity could enjoy the freedom of out door exercise and play, would be hourly threatened if the roadway through the grounds could be used at will by the changing occupants of the eight hundred acre residue contiguous thereto.

It is the primary object of the court to ascertain and carry out the intention of a testator. Here the intention is fairly clear from the langauge used and the text of the entire will. Mrs. Paxton was the owner of the entire estate. The court has no right to declare any abridgement upon her power of disposal of it. It may be that if she had devised the fifty acres, say, to some relative, without the condition that the ownership should necessarily include the hedge and the roadway, and had at the same time devised the residue of the property to some one else, a question of dominant and servient estate and of an easement might have arisen. To hold, however, that any right of easement was intended by Mrs. Paxton to be allowed to the future and unknown purchasers of the eight hundred acres

and be imposed as a burden upon the real estate given to the Paxton Memorial would be to deny her the right to dispose of her property in the way she designed and by the language she used. No easement in a proper legal sense could exist so long as Mrs. Paxton was the owner of the entire tract, therefore there must have been a time when an easement arose or was created. *Turner* v. *South and West Improvement Company*, 118 Va. 720, 88 S. E. 85. An easement upon severance of a parcel of real estate by the owner may arise by implication unless the owner expressly excludes such implication. Mrs. Paxton did that in this case, and, as held in *Prior* v. *East, supra*, there are words here limiting and defining what was intended to be embraced in and to follow the segregation of the fifty acres from the balance of the estate.

██ Objections are made to the admission and exclusion of some of the testimony. The testimony so objected to would not affect the decision of the case; hence these objections need not be considered.

I am, therefore, of opinion to affirm the decree of the trial court.

McLEMORE and CHINN, JJ., concur with CRUMP, P.

*Decree affirmed.*

CHRISTIAN, J., dissenting:

This is an appeal by the defendants, Joseph S. Whitmore and Horace C. Littlejohn from a decree of the Circuit Court of Loudoun county perpetually enjoining and restraining them from using a certain driveway through the land of the plaintiff, Margaret Paxton Memorial for Convalescent Children, a corporation.

The facts upon which this decree is based are practically uncontroverted. For many years—indeed for fifty years or more—there had been maintained by Mrs. Rachel A. Paxton, deceased, and her husband, her predecessor in title, a roadway from her residence known as "Carlheim" to the Leesburg and Point of Rocks turnpike. This roadway, as shown by the plat filed with the record, extended from said turnpike, along the southern boundary line of the farm and the Babson tract, then turns slightly northeast through the farm by the mansion house, lawn and garden, to the barns and the farm or tenant house. There is a driveway from the mansion house, across its lawn, running into this roadway. There is also a roadway from the yard of the farm or tenant's house, extending north to the United States Government's road to Ball's Bluff where the latter joins the Leesburg State highway to Point of Rocks.

The annexed plat shows the location of the road in controversy extending A to B and thence to C, and the location of the buildings on the farm and their relation to the balance of the farm, and this roadway and the public highways.

Charles R. Paxton purchased this farm of more than 800 acres in 1869. He erected a very handsome and expensive residence thereon, with a lawn and garden bounded upon this roadway. He also erected barns, and a stone farm house in the rear of his residence and extended said roadway to these buildings. During his lifetime this roadway was used by himself and his tenants as the means of ingress and egress to and from the Leesburg highway; all the occupants of the farm traded and did business at Leesburg.

In 1889 Charles R. Paxton died, having made his last will and testament whereby he devised said farm to his

wife, Rachel A. Paxton. Mrs. Paxton used and occupied this farm as her husband had done. She leased said farm to a tenant, except thirty acres thereof near her dwelling, by written lease for a year, but the tenants held over as tenants from year to year, for as much as ten years or more. The leases from Charles R. Paxton nor his wife, to each succeeding tenant, did not expressly grant an easement in this driveway as appurtenant to the respective leases. But each tenant during his occupancy freely used and enjoyed said driveway as a matter of right and no objection or condition was placed upon them in regard to it by their landlord.

Rachel A. Paxton died, testate, in the latter part of 1921. Her will, with codicil, was probated in Loudoun county circuit court on the 16th day of January, 1922. By the seventh clause thereof she gave and devised her "home at Leesburg, Loudoun county, Virginia, and known as 'Carlheim' with fifty acres of land surrounding it, so selected as to include the house and buildings and the driveway and hedge leading from 'Carlheim' to the turnpike road," to her executors, in trust to be by them given and deeded to a proper corporation or society which might thereafter be organized for the purpose of supporting and maintaining a summer home for convalescent children to be known as "The Margaret Paxton Memorial for Convalescent Children." The word "summer" was stricken from the will by the codicil.

By the sixteenth clause of her will, she nominated and appointed Charles Adsit, of Hornell, New York, and Dr. William Claytor Orr, of Leesburg, Virginia, her executors, and authorized, empowered and directed "them to sell all of my property, both real and personal, either at public or private sale, at such times and for

such prices and upon such terms as they may deem to be for the best interests of my estate, and to convey the same by deed or deeds to the purchaser or purchasers thereof.'' The purpose of the above clause in her will, as shown by the codicil, was to pay certain legacies therein provided for, including $70,000.00 to the Memorial Corporation, and to pay over one-third of the residue to the Memorial Corporation and two-thirds to her nephew, Charles Adsit.

The Margaret Paxton Memorial for Convalescent Children having been chartered and organized, the executors of Mrs. Paxton, on September 5, 1923, executed to it a deed conveying fifty acres of land upon which "Carlheim" residence is located. This parcel of fifty acres was so laid off as to extend across and include a considerable part of the roadway from the *farm dwelling* to the Leesburg and Point of Rocks turnpike.

The executors afterwards undertook to sell the balance of the farm, 810 acres, at public auction, but not receiving a satisfactory bid, it was taken in. At this public offering, with the consent of the trustees of the Memorial Corporation, it was announced that an easement of right-of-way over the roadway would go with the land. W. H. Howser, the hold-over tenant of Mrs. Paxton, was using the roadway as appurtenant to his lease.

Charles Adsit having died, the surviving executor, Dr. W. C. Orr, by contract in writing, sold the residue of the land for $60,000.00 to the defendants, Whitmore and Littlejohn, subject to the lease of Howser. After the public offering of the balance of the farm, the trustees served notice upon Dr. Orr to the effect that the residue of the farm did not have an easement over said roadway. Dr. Orr maintained that such easement

passed with the land. He executed a deed to the defendants for the land without mentioning the easement over the roadway. Thereupon the plaintiff corporation filed its bill in chancery, in the Circuit Court of Loudoun county, to perpetually restrain and enjoin the grantees and the tenant, Howser, from using said roadway.

Dr. Orr claimed that an easement over the roadway was appurtenant to the land. His deed to the defendants by virtue of section 5168 of the Virginia Code conveyed to them all the appurtenances of every kind belonging to the lands embraced therein.

The contract of sale between Dr. Orr and the defendants was an executory contract for the sale of land, and the general rule of law is that where an executory contract of sale is followed by a subsequent deed, in the absence of fraud or mistake, the executory contract and the rights of the parties rest solely on the executed contract or deed. The plaintiff, not being a party or privy to either of these contracts, cannot invoke the contract of sale to limit the legal effect of the deed.

Upon the bill and exhibits, affidavits and testimony taken orally before the court, the learned chancellor decided that the easement did not exist, and perpetually enjoined the grantees from using the driveway. From this decree the defendants have appealed.

It is the contention of the plaintiff that defendants did not have the right-of-way over the "driveway" after the devise to the corporation, unless it was a "way by necessity." The court took that view of the case and so ruled in taking the testimony, while the defendants claimed the right to use the roadway as appurtenant to the land. The issue therefore is in a narrow compass. The plaintiff claiming *that the intent* of the testator in devising the driveway to it in fee

simple, gave it the exclusive right to the same. The defendants on the other hand claim that it was the intent of the testator to devise the driveway subject to the easement in favor of the residue of the farm as used during her life.

It is true that Mrs. Paxton, the fee simple owner of the whole property, could not have had a separate easement (a lesser estate) in the driveway from the barns and farm dwelling to the public road. Nevertheless during the lifetime of her husband and herself, for nearly forty years, this driveway was used by their tenants as an easement appurtenant to said leases, and when she came to partition the land between the plaintiff and her executors she must have had in mind this driveway and its continuous use by herself and tenants. *Hancock* v. *Thornhill*, 119 Va. 103-105, 89 S. E. 97.

The case of *Scott* v. *Moore*, 98 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749, involved the easement in alleyway over No. 400 East Franklin street in the city of Richmond as appurtenant to the adjoining lot No. 402. Both lots were owned by James Caskie, who in his lifetime established the alley-way, which was used as appurtenant to No. 402. James Caskie died in the year 1866, and by will left No. 400 to trustees for the benefit of the family of his son James A. Caskie; and No. 402 to his son John S. Caskie, thus by his will he severed his entirety of ownership as was done by Mrs. Paxton in the instant case.

The said lots passed by *mesne* conveyances to the parties to that suit; lot No. 402 to the appellant Scott, and lot No. 400 to the appellee Moore. The appellee, who prevailed in the trial court, contended, that it requires descriptive words of grant or reservation in the will to create an easement in favor of one part of a

heritage over another, and as there were no descriptive words of grant or reservation in the Caskie will to create the easement in favor of the owner of premises No. 402, no such easement existed.

Judge Cardwell, who delivered the opinion of the court reversing the decree of the trial court, in discussing the law on this subject, on page 675 of 98 Va. (37 S. E. 344), cites the general rule as set forth in Washburn on Easements on pages 102-103, as follows:

"Although it might, perhaps, be difficult to embody the leading doctrine of the foregoing cases into any general proposition, it would seem that, in case of a division of an estate consisting of two or more heritages, whether an easement or convenience which may have been used in favor of one, in or over the other, by the common owner of both, shall become attached to the one, or charged upon the other, in the hands of separate owners, by a grant of one or both of those parts, or upon a partition thereof, must depend, where there are no words limiting or defining what is intended to be embraced in such deed or partition, upon whether such easement is necessary for the reasonable enjoyment of the part of such heritage as claims it as an appurtenance. It must be reasonably necessary to the enjoyment of the part which claims it, and where that is not the case, it requires descriptive words of grant or reservation in the deed to create an easement in favor of one part of a heritage over another."

Again on page 105, it is said:

"It may be considered as settled law in England, (1) that where the owner of two adjoining lots sells one, he does not reserve impliedly for the benefit of the other easement except those of strict necessity, such as a way of necessity; but, (2) that he does impliedly grant to the grantee all those continuous and apparent ease-

ments which are necessary for the reasonable use of the property granted, and which have been, or are at the time of the grant, used by the owner of the entirety for the benefit of the part granted; (3) if he sells both lots at the same time, each grant carries all the apparent and continuous easements, which are necessary for the reasonable use of the property granted, and which have been or are at the time of the grant used by the grantor for the benefit of such property."

As stated by Judge Cardwell in *Scott* v. *Moore*, *supra:*

"It is under this latter clause mainly that the case we have in hand comes." So we must conclude that the instant case comes under said clause.

The decisions upon the subject of implied grant in the different States of the Union are numerous and often conflicting, but the court in *Scott* v. *Moore, supra,* 98 Va. pages 676-677, 37 S. E. 345 (81 Am. St. Rep. 749), quotes with approval the following language from *Elliott* v. *Rhett*, 5 Rich. (S. C.) 405, 57 Am. Dec. 750, and notes, making it the law in Virginia, as follows:

"Apart from all considerations of time, there is implied, upon the severance of a heritage, a grant of all those *continuous and apparent easements which have in fact been used by the owner* during its unity, though they have no legal existence, as well as of all those necessary easements without which the enjoyment of the several portions could not be fully had."

"The opinion of the Supreme Court of Maryland by Miller, J., in *Mitchell* v. *Seipel*, 53 Md. 251, 36 Am. Rep. 404, is an able and elaborate discussion of the American English cases as to the law applicable to cases where the severance of heritage is by simultaneous conveyance to separate persons, and it is said:

" 'All these continuous or apparent easements, or, in

other words, all these easements which are necessary to a reasonable enjoyment of the premises granted, and which have been, or are at the time of the grant, used by the owner of the entirety for the benefit of the part granted will pass to the grantee under the grant.' "

The rule of law laid down in this latter case is identical with *Elliott* v. *Rhett, supra,* but it goes further and adds "as well as of all those necessary easements without which the enjoyment of the several portions could not be fully had."

The driveway in the instant case was apparent, and had been in continuous use by the owners of the heritage and their tenants for more than forty years, as necessary to a reasonable enjoyment of the premises devised. It had been, and was at the time of the devise, used by the owner of the entirety for the benefit of the part of the farm devised to her executors, for sale, and the easement therein passed to their grantee. The evidence in the case shows that this driveway was reasonably necessary to the enjoyment of that part of the farm; that it would cost a considerable sum of money to build another road, and if the purchasers of the farm had not believed it an appurtenance, they would have paid less for the farm.

When the will was drawn (which was clearly prepared by an attorney of learning and ability) and up to the time of her death, the driveway was plainly visible, notorious and jointly used by her tenants and herself, and it may be fairly presumed that she intended its preservation. But this driveway in its lower stretches was upon the land she designed to devise to her executors for sale, and if she devised the fifty acres of land to the plaintiff, without the driveway, the executors and their grantees would have taken the driveway subject to the implied use and benefit of the

fifty acre tract because reasonably necessary and convenient thereto. To prevent any controversy over this right, she gave the roadway with the fifty acres of land to the plaintiff.

There is another very manifest reason why the driveway was given to the plaintiff. The executors were given authority to sell the residue of the farm upon such terms as they may deem best for the estate. If they had been given the driveway, they could have added as many servitudes thereon as they saw fit. By virtue of the manner of division of her real estate by the testator, no other or greater servitudes can be placed upon this driveway than were enjoyed by her tenants in her lifetime.

It does not seem to us that the fact that the testator devised the driveway with the fifty acres of land to the plaintiff shows clearly an intention to discontinue its use and enjoyment as appurtenant to the residue of the tract, nor overcome the presumption of law that she intended its preservation. Her intent as gathered from the language of the will and the surrounding circumstances was to make the plaintiff the owner of the servient estate, and the residue of the farm the dominant estate.

Judge Cardwell, after reviewing the former decisions in Virginia on this subject in *Scott* v. *Moore, supra,* on page 683 of 98 Va. (37 S. E. 347), states the rule of law, where the owner of a heritage by contemporaneous conveyance severs the same, and what easements pass by implication with the respective estates, in the following paragraph:

" 'Servitudes adopted by the owner which are plainly visible and notorious, and from the character of which it may be fairly presumed that he intended their preservation as necessary to the enjoyment of his prop-

erty, become, when lands are divided and pass into other hands, permanent appurtenances thereto, and neither the owner of the dominant or servient portions of the land have power to adversely interfere with their proper use and enjoyment.' *Phillips* v. *Phillips*, 48 Pa. St. 178 [86 Am. Dec. 577]; *Eby* v. *Elder*, 122 Pa. St. 342 [15 Atl. 423]; *Stein* v. *Dahm*, 96 Ala. 485 [11 So. 957]."

The fact that there was another farm road from the farm dwelling to the United States Government road which was used infrequently does not deprive the purchasers of their rights in this driveway. The defendants rights are not based upon the principle of a right-of-way by necessity, but is a matter of *intention* of the testator. Nor do the contentions of the plaintiff that (a) "the right-of-way is not a continuous easement," and (b) that the roadway in question is not "reasonably necessary" to the enjoyment of the estate of the defendants apply to the easement in this case.

For the reasons above set forth, I think the decree complained of should be reversed, but the majority of the court, for reasons set forth in the opinion of CRUMP, P., have decided to affirm the decree, and a judgment of affirmance will therefore be entered.