## CIRCUIT COURT OF CAROLINE COUNTY

Dorothy Rowe Gravatt et al.

v.

John F. Ames et al.

April 20, 1990

Case No. CH89-000049

BY JUDGE WILLIAM H. LEDBETTER, JR.

The issue in this case is whether the defendants have an access easement by necessity or by implication across the lands of the plaintiffs.

### Facts

Holly Hill Farm, located on State Route 207 in Caroline County, was once a vast farm of several hundred acres along the Mattaponi River. For many years, the property was owned and occupied by the Rowe family. In the early 1960's, several small parcels along Route 207 were conveyed off to individual members of the family. One of those off-conveyances was the 6.81-acre parcel that is involved in this litigation.

The 6.81-acre parcel was conveyed in 1961 to Dorothy Rowe Gravatt, a member of the Rowe family. The next year, she deeded the western half of the parcel to another family member, Edgar Scott Rowe. In 1963, he devised his western portion of the parcel to his wife for life, then to his daughter, Mary Frances Rowe Taylor. By these means, Gravatt and Taylor, the plaintiffs, are now the owners of the 6.81-acre parcel which was once part of Holly Hill Farm.

The remainder of Holly Hill Farm was conveyed by the Rowes to J. Harris Scholl in 1962. Scholl owned the farm until 1985 when it was sold to John F. Ames, one of the defendants. (Actually, the conveyance was to a trust for the benefit of Ames and his wife for their lives, then to their son. No misjoinder

motion has been made, and the question came up only by reference in memoranda and argument of counsel after the commissioner had filed his report. Therefore, the court will take no further note of the matter and will address the merits of the case.) Holly Hill Farm Corporation, the other named defendant, operates the farm.

The focus of the controversy is an old dirt road leading from Route 207 across the 6.81-acre Gravatt-Taylor land to the easternmost portion of Holly Hill Farm. Gravatt and Taylor seek to enjoin Ames' use of the road. Ames contends that he is entitled to use the road to reach the easternmost portion of Holly Hill Farm, referred to as the "woodpile area," by virtue of an easement by necessity or implication. (Ames has abandoned his claim to an easement by prescription. Also, he concedes that he has no express grant of easement.)

There is no doubt that the road in question has been in existence a long time. None of the witnesses, some of whom have been familiar with the property for more than three-quarters of a century, could recall a time when the road did not exist, at least as a "wagon road," "wood lane," or "path." Aerial photographs show the road in existence at least since the early 1950's.

The extent to which the road was used through the years, by whom, and for what purposes, are disputed factual issues.

In late 1988 or early 1989, Ames ignored a cable across the road and began using the road to move vehicles and equipment to and from the wood pile area of his farm in connection with timbering and construction of a fence. The wood pile area is behind the Gravatt-Taylor parcel and is shown on the plat of property. Pl. Ex. # 1. That activity precipitated this suit.

### Status of the Case

The suit was filed on May 9, 1989. In their bill, Gravatt and Taylor seek injunctive relief and damages against Ames and the corporation for their continuing trespass. The defendants filed a responsive pleading.

On motion of the plaintiffs, after a full hearing, the court temporarily enjoined the defendants from using the road. (During the course of the litigation, the temporary injunction was enlarged and modified. Bonds were posted to assure compliance with the terms of the injunction and its modification.) On August 30, 1989, the case was referred to a commissioner in chancery.

The commissioner conducted hearings on August 31, 1989, and September 1, 1989. He received memoranda, viewed the property, and made his report on December 7, 1989. All parties filed exceptions to the report or portions of it.

Additional memoranda were filed, and the court heard arguments on the exceptions on March 21, 1990.

## Commissioner's Recommendations

The commissioner reports that the evidence fails to establish an access easement or right of way across the Gravatt-Taylor land for the benefit of Holly Hill Farm, and consequently, he recommends that the defendants be enjoined from using the road. The commissioner further finds that the defendants' use of the road has caused only *de minimis* damage, if any, and recommends against an award of compensatory or punitive damages to the plaintiffs.

While a commissioner's report is not entitled to the same respect as a jury verdict, Virginia Code § 8.01-610, it is well settled that the report should be respected and given great weight. *Eppes v. Eppes*, 181 Va. 970 (1943); *Hill v. Hill*, 227 Va. 569 (1984). The commissioner's findings of fact, upon disputed evidence, are prima facie correct and should not be arbitrarily disturbed. Especially is this true where, as here, the testimony was taken in the presence of the commissioner so that he had occasion to observe the witnesses and their demeanor on the stand and to gauge their character, their biases, if any, and their comparative abilities to know the truth about the matters to which they testified.

Additionally, the court independently has reviewed the evidence, including the 450 pages of transcribed testimony and the applicable legal principles.

## Easements by Necessity

To establish an easement by necessity, three conditions must be shown. First, the lands must have been under common ownership at some time, and this unity must have been severed. Second, the severance must have given rise to the need for the easement. Finally, reasonable need for the easement must be proved by clear and convincing evidence. *Middleton v. Johnston*, 221 Va. 797 (1981); *Fones v. Fagan*, 214 Va. 87 (1973).

There is no dispute about unity of ownership and severance. Until 1961, the Gravatt-Taylor parcel was a part of Holly Hill Farm. At that time, it was severed. Thus, the first condition is met.

Did the severance give rise to the need for the easement?

The severance occurred in November of 1961. At about the same time, other conveyances were made to members of the Rowe family along the public road so that the farmland behind each off-conveyance was denied

direct access to the road. The sequence of the off-conveyances is not in evidence (except that it appears from the description in Gravatt's deed that perhaps the off-conveyance of the parcel adjoining her on the east preceded hers). Therefore, assuming for the purpose of this analysis that the wood pile area is now inaccessible to Route 207, it cannot be determined from the record whether the severance of this parcel landlocked any portion of Holly Hill Farm and thereby created a need for the right of way.

This aspect of easements by necessity was addressed in *American Small Business Investment Company v. Frenzell*, 238 Va. 453 (1989). There, the Court said:

> A right of way by necessity is based on the theory that when a grantor conveys property, he does so in a manner which will allow beneficial use of both the property he conveys as well as any property he retains. This type of easement arises from an implied grant or implied reservation ... . It is essential to this theory that the necessity arise simultaneously with the conveyance. If the conveyance does not preclude the beneficial use of either the property conveyed or the property retained, an implied grant or reservation is unnecessary ... . *Frenzell, supra,* at p. 456.

Because the court cannot resort to speculation or conjecture to determine whether this severance gave rise to the necessity of a right of way from the wood pile area to the public road, the defendants have failed to establish an easement of necessity.

The court agrees with the defendants that reasonable need, not absolute physical necessity, satisfies the third condition. *Jennings v. Lineberry*, 180 Va. 44 (1942); *Hartsock v. Powell*, 199 Va. 320 (1957). The issue is whether the defendants have proved a reasonable need for the easement by clear and convincing evidence.

The evidence on this point is in conflict. Several witnesses testified that the wood pile area is accessible from other portions of the tract which, in turn, are readily accessible to Route 207 along several hundred feet of frontage. The commissioner viewed the property on two occasions and, in essence, agreed with these witnesses. Other witnesses testified that rough terrain and "wet spots" separate the wood pile area from the other parts of the farm and that construction of an access road would be unduly expensive.

The court cannot say that the commissioner's finding of facts on this issue, upon the conflicting evidence, is plainly wrong. The evidence at the commissioner's hearing did not, as the defendants assert in their

memorandum, "conclusively demonstrate" that the construction of a road linking the wood pile area to the other portions of the farm would be "wholly impractical." Nor is it true, as they contend, that the commissioner "totally ignored the evidence" and relied solely on his view. In fact, upon an independent review of the evidence, the court is persuaded that the testimony of the plaintiffs' witnesses is more convincing.

Accordingly, the court is of the opinion that the defendants have failed to show a reasonable or practical need for a right of way across the plaintiffs' property.

### Easement by Implied Grant

The doctrine of easement by implied grant, or implication, also known as the doctrine of quasi-easements, holds that where the owner of land has so arranged his property that one parcel derives from another a benefit or advantage of an obvious, continuous, and reasonably necessary character and he sells one of the parts, it is implied (unless provided otherwise, of course) that the benefit or advantage continues as before the separation of title. See 6B M.J., *Easements*, § 10.

A person cannot have an easement in his own land, but he may use one part for the benefit of another part. This will not create an easement so long as the two parts remain in the same hands; hence, the reference to "quasi-easements." Upon severance of the parts, there is an implied grant or reservation of all those continuous and apparent "quasi-easements" which have been used by the owner during unity and are reasonably necessary for the enjoyment of one of the parts. It is said that the use, in order to pass or to be retained by implication, must be open, visible, apparent, and continuous. *Sanderlin v. Baxter*, 76 Va. 299 (1882); *Fones v. Fagan, supra, Haynie v. Brenner*, 216 Va. 722 (1976).

Applying these principles to this case, once again the facts are disputed. The defendants, in an effort to show a reservation of easement by implication, emphasize those parts of certain witnesses' testimony which tend to support the proposition that the road in question has been in existence, apparent, and in use for decades.

On the other hand, the plaintiffs' witnesses referred to the road as an old wagon road or wood lane, seldom used by anyone, grown up with weeds and brush. For instance, Frances Rowe Lambert, age 71, grew up on Holly Hill Farm and has lived within sight of the property all of her life. She stated that the road was a "wagon road" and that to her knowledge, it was never used by the Rowes or their successors, the Scholls, for any purpose on a regular basis.

On occasion, she said, timber had been hauled out over the road, and at one time, small amounts of gravel were removed from the gravel pit to the public road by way of this road. In sum, she described the road as just another of many seldom-used roads that cross-cross large farms and timber lands. (Transcript, pp. 115-118.) Another witness for the plaintiffs, Robert C. Doswell, age 83, testified that the road has not been used by anyone for more than thirty years, except that "Jimmy Farmer" kept a wood pile on that portion of Holly Hill Farm and, with permission, used the road to remove firewood from time to time. (Transcript, p. 211.) James W. Farmer, age 63, said that he maintained a "firewood rack" in the woodpile area of Holly Hill Farm and used the road to haul out wood with the permission of Rufus Rowe, Gravatt's father and overseer of her property. He stated that a cable was across the road, and no one used it without getting the key to the cable lock from Rufus Rowe. (Transcript, pp. 16-19.)

Therefore, although the testimony is conflicting, there is ample evidence to support the proposition that this road was not in continuous or apparent use at the time the 6.81-acre parcel was severed from Holly Hill Farm; nor, for that matter, at any other time within memory of those persons most familiar with the property. Instead, as Frances Lambert explained, the road was just another old lane or path which can be seen cross-crossing farms and timber lands, seldom if ever used in modern times, grown up with weeds and shrubs, and not considered "reasonably necessary" for anything.

The defendants miss the point when they emphasize the *existence* of this old road, or trace, for many years. Most roads, not in use for generations, remain visible long after they are abandoned. It is the *use*, not merely the *existence*, of a way that must be continuous and apparent in order to give rise to an implied reservation of easement.

An old way, seldom if every used, does not meet the criteria enunciated in *Sanderlin v. Baxter*, 76 Va. 299 (1882). Such a road cannot be the basis of an implied understanding or agreement between a grantor and grantee that the grantor reserves the right to use the road over the land of his grantee, in derogation from his own grant, for the benefit of a portion of land that he retains.

If the rule were otherwise, these old roads, or traces of roads, used in former times for farm purposes, logging, or whatever, now in disuse or rarely used, and unnecessary for any reasonable purpose, would create havoc with land titles and would enable landowners, such as the defendants here, to lay claim to easements where none exist.

An implication of easement is further negated by the conduct of the parties after severance.

The Scholls purchased Holly Hill Farm from the Rowe family in 1962, a year after the Gravatt-Taylor parcel was severed from the farm. During the twenty-three year period that the Scholls owned the farm, they used the road rarely and then only with permission. They never asserted a right to use the road or that its use was appurtenant to their property. They never complained that passage was blocked by a locked cable, the key to which they had to get from Rufus Rowe, caretaker of the Gravatt-Taylor property. (Ames testified that a key to the lock was in the house when he purchased Holly Hill Farm in 1985. Even so, one can only infer from that fact either (1) Rufus Rowe gave the Scholls a key rather than requiring that they find him and get his key each time they wanted to use the road, or (2) the Scholls had a duplicate key without the knowledge or consent of Rufus Rowe. In either case, the fact remains that the Scholls never challenged Gravatt's and Taylor's control of the use of the road and never gave any indication that they asserted a right to use it as an appurtenance to their farm.)

Finally, in order to imply an easement, use of the way must be reasonably necessary. The defendants correctly point out that a demonstration of prior use reduces the degree of necessity required. *Fones, supra.* However, with that reduction, the defendants' evidence is insufficient. Ample evidence exists to support the conclusion that the wood pile area is not inaccessible and that a way can be created, with some inconvenience, to link that area with the remainder of the farm and, consequently, the public road.

For these reasons, the court is of the opinion that the defendants have failed to establish an easement by implication.

The defendants complain that the commissioner did not specifically address the doctrine of easement by implication. It is true that the commissioner's report does not separately analyze the criteria or elements of this type of easement. It is clear, however, that the commissioner made a finding that covers the issue. He concluded that the defendants "do not have any type of legal easement or right of way over the lands of plaintiffs, either by express grant, by necessity, by prescription, *or any other legal theory.*" (Report, p. 8; emphasis added.) Further, the court has reviewed the doctrine, has analyzed the facts of this case, and has applied the law to the facts. In doing so, the court reaches the same conclusion as the commissioner.

### Damages

Because the defendants have no right to use the road, their intrusions upon it constitute a continuing trespass. It follows that the plaintiffs are entitled to damages if any have been shown.

The commissioner concluded that the plaintiffs are not entitled to an award of compensatory or punitive damages. As for the latter, the commissioner found no evidence that the defendants acted with malice, or in willful, wanton, or reckless disregard of the rights of others. As for compensatory damages, the commissioner reported that the damages to the road attributable to the defendants' improper use was insignificant. The other damages that the plaintiffs claimed, according to the commissioner, were not satisfactorily proven or were caused by the defendants' construction of a fence along the boundary line and not by the use of the road itself.

Upon a review of the evidence, the court agrees with the commissioner and holds that the plaintiffs are not entitled to an award of damages.

## Costs

The costs of this proceeding, including the cost of instituting the suit, the court reporter's charges for taking and transcribing the evidence, and the commissioner's fee, which the court finds to be reasonable and hereby approves, shall be assessed to the defendants.

## Conclusion

The defendants do not have an easement across the lands of the plaintiffs. Accordingly, the defendants will be permanently enjoined from entering upon or using the road across the lands of the plaintiffs for any purpose. The bond posted by the plaintiffs in connection with the temporary injunction and the bond posted by the defendants in connection with the modification of the temporary injunction will be terminated and their deposits will be returned. The plaintiffs are not entitled to damages as a result of the defendants' use of the road. Costs of this proceeding will be assessed against the defendants.